TEXAS INSTRUMENTS, INCORPO-
RATED, Plaintiff,

v.

BRANCH MOTOR EXPRESS CO.,
Defendant and Third-Party
Plaintiff,

v.

AIRLIFT INTERNATIONAL INC.,
Third-Party Defendant.

Civ. A. No. 67–44–F.

United States District Court,
D. Massachusetts.

Feb. 16, 1970.

## OPINION

FRANCIS J. W. FORD, District Judge.

This is an action under 49 U.S.C. § 20(11) for damage to goods shipped in interstate commerce, brought by the consignee against the initial carrier, which in turn seeks recovery in a third party complaint against a connecting carrier.

In 1965 plaintiff ordered from Leland-Gifford Company of Worcester, Massachusetts a tape controlled drill machine weighing 1240 pounds, for a purchase price of $19,390.00. On September 9, 1965 the machine was turned over to defendant Branch Motor Express Co. for ultimate delivery to plaintiff. The bill of lading called for Branch to move the machine by truck to Logan Airport. From there it was to be transported by plane of third-party defendant Airlift International, Inc. to Atlanta, thence by plane of Delta Airlines to Dallas, and from there to plaintiff's plant in Dallas, Texas. The bill of lading carried the notation "Precision; use extreme care" and also declared the value of the machine as $20,000.

The machine was delivered to Airlift at Logan Airport. A way bill issued by Branch was delivered to Airlift with the shipment. This way bill had no notation as to the value of the shipment. The court finds that no copy of the bill of lading and no notice, written or oral, of the declared value of the machine was given to Airlift. Airlift in turn gave no notice to Delta as to the value of the machine.

The machine in its shipping crate was inspected at Worcester at the time it was turned over to Branch and was apparently in good condition. When the machine arrived in Dallas it was found that the crate was broken and the machine damaged. Later inspection showed that the machine had broken knobs and control units and a shaft out of line and bent. The machine in its damaged condition was inoperable. It was a precision machine and in its damaged condition had no market value except whatever value it may have had as junk.

It appears that the damage to the machine occurred while it was being transported by Delta. Delta has acknowledged liability, but in the absence of notice to Delta of the $20,000 declared value, admits liability only to the extent of $620, and has sent to plaintiff its check for that amount. This check bears on the back a stamped legend reading:

"The undersigned by endorsement below acknowledges receipt of this check as full settlement of, and hereby

releases DELTA AIR LINES, INC. from any and all claims against DELTA AIR LINES airFREIGHT

Claim number 1406–66"

The check has not yet been endorsed or cashed by plaintiff.

■ There is no merit to defendant's contention that plaintiff has in any way waived its claim against defendant. There is nothing in 49 U.S.C. § 20(11) to support the contention that merely writing a claim letter to one carrier involved precludes the plaintiff from recovering in an action under the statute against another carrier. Plaintiff's physical retention of Delta's check, unendorsed and uncashed, does not amount to a release of one joint tortfeasor which would bar recovery against another.

There is nothing in the evidence to support the contention that the machine was not properly packed for shipment, or that the damage to the machine was due in whole or in part to the way in which it was crated.

■ Plaintiff's machine had a fair market value of '$19,390. It was rendered useless by the damage suffered in transit. Plaintiff is therefore entitled to recover the full value of the machine, less the amount which plaintiff can realize by ultimately cashing the check from Delta, and which it concedes should be allowed as a credit to defendant.

Plaintiff has a further claim for special damages it claims to have suffered. In brief, its contention is that this machine was purchased for adaptation to the task of producing circuit boards which plaintiff was already manufacturing using manual labor. When this machine was found to be damaged on arrival, it took six weeks before another machine could be obtained from the manufacturer. As a result of this delay plaintiff says it lost $3600 paid over a six week period to six employees performing manual operations at $100 a week, whose services would not have been needed if the machine could have been used. Further, plaintiff's witness testified that with the use of the machine plaintiff eventually increased production of circuit boards from $5000 a month to $35,000 a month, of which gross amount 40% was what witness described as "inventoriable profit", a term which he did not further define. However, it also appears from the testimony that this was the first use of a machine of this type to do the work involved, that the machine as purchased had to be modified experimentally over a period of time before the process was fully developed. In fact, it was not until July, 1966, when boards produced by use of the machine were found to satisfy certain Navy Department tests that development had reached a stage where the boards produced by the machine could be offered commercially for broad usage. There was no specific evidence of any actual loss of business because of the delay.

■■ In the light of this evidence, the extent of special damages, if any, is essentially speculative, depending more on optimistic opinions and assumptions than on solid fact. Plaintiff has failed to prove these special damages with sufficient certainty to justify an award. Moreover, plaintiff would be entitled to such special damages for delay only where it can be found that these damages could have reasonably been contemplated by the parties at the time of the contract of carriage. Here it does not appear that the damages claimed would obviously have resulted from any delay due to damage to the machine in transit, and defendant was never given any notice of special damages which might so result. Gardner v. Mid-Continent Grain Co., 8 Cir., 168 F.2d 819.

■ Defendant's claim against Airlift is based on alleged negligence in two respects. First, it is claimed that the damage to the machine was caused by the negligence of Airlift in transporting it, so as to entitle Branch to recover under 49 U.S.C. § 20(12). There was no evidence of any such negligence on the part of Airlift. The evidence clearly shows that the damage occurred only after Airlift had turned the machine over to Delta.

■ Secondly, Branch contends it was injured by the negligence of Airlift in failing to declare a $20,000 value for the machine in delivering it to Delta. This failure, however, must be attributed solely to Branch, which had failed to give any notice of this declared value to Airlift. Airlift was not negligent because it received no notice of the declared value, either from the document given to it by Branch, or from any other source.

Judgment will be entered on the complaint for plaintiff in the amount of $18,770. Judgment on the third-party complaint will be entered for third-party defendant dismissing the complaint.