B. F. McKERNIN & CO., INC., Plaintiff,

v.

UNITED STATES LINES, INC. and United States Lines Operations, Inc., Defendants.

UNITED STATES LINES, INC., Defendant and Third-Party Plaintiff,

v.

INTERNATIONAL TERMINAL OPERATING CO., INC., Third-Party Defendant.

No. 74 Civ. 2301.

United States District Court, S. D. New York.

July 9, 1976.

Wofsey, Certilman, Haft, Snow & Becker, New York City, for plaintiff; John J. Phalen, III, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendants; David W. Martowski, Arman Maurice Pare, Jr., New York City, of counsel.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for third-party defendant; Robert E. Daley, New York City, of counsel.

LASKER, District Judge.

B. F. McKernin & Co., Inc. sued United States Lines, Inc. and United States Lines Operations, Inc. in New York State Court to recover damages allegedly resulting from the defendants' delays in delivering a shipment of 10 cases of "Brassware" from the Netherlands. The case was removed to this court from the New York Supreme Court. United States Lines subsequently served a third-party complaint on International Terminal Operating Co., Inc. for indemnification. Defendants (U.S. Lines) and the third-party defendant (I.T.O.) move for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I.

McKernin contracted with U.S. Lines to ship 10 cases of Brassware from Rotterdam to New York on the vessel American Leader in October, 1973. Prior to shipment McKernin had contracted to resell the goods in the United States for $10,207. Due to a chain of mishaps, McKernin did not receive the goods on time. When the vessel reached this country the cases were erroneously unloaded in Philadelphia. From Philadelphia the cases were taken by truck to Newark and by mistake reshipped to Europe. U.S. Lines flew the goods back to New York as soon as they reached the Netherlands and McKernin ultimately received them about December 13, 1973, a month later than expected. Despite the delay, McKernin resold the goods at prices comparable to the original prices which it had expected to receive. (Deposition of Vincent L. McKernin, President of B. F. McKernin, pp. 29–30).

McKernin failed to perceive any comedy in this series of errors and filed a complaint stating four causes of action. The first and second seek compensatory damages in the amount of $10,207. for "conversion" (first cause of action) and breach of contract (second cause of action).

The third seeks to recover $50,000. for loss of goodwill, future business and business reputation; the fourth requests punitive damages in the amount of $100,000. for U.S. Line's willful and "gross" conduct.

II.

*Claims for Conversion and Breach of Contract*

As stated above, McKernin sold the brassware for the same price it intended to charge had it arrived on schedule. Although McKernin characterizes its first two causes of action as stating common law claims of conversion and breach of contract, U.S. Lines and I.T.O. argue that under the Bill of Lading and statutory law (1) any claim McKernin might have arises solely under the Carriage of Goods by Sea Act (COGSA); (2) COGSA limits damages to the monetary amount actually lost as a result of the carrier's negligence; and (3) because McKernin ultimately received the price it initially sought, it is entitled to no damages and the first two causes of action must be dismissed.

The brassware was transported under Ocean Bill of Lading No. 110–006 which constituted the contract between McKernin and U.S. Lines. According to the third clause of the Ocean Bill of Lading and the second clause of U.S. Line's Long Form Bill of Lading (which was incorporated into No. 110–006), the relationship between the parties is governed by COGSA.

The statutory language of COGSA, as well as the shipping contract, is further authority that COGSA governs. Sections 1300 and 1312 of the Act provide:

"§ 1300 Bills of lading subject to chapter

"Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from parts of the United States, in foreign trade, shall have effect subject to the provisions of this chapter."

\*   \*   \*   \*   \*   \*

"§ 1312   This chapter shall apply to all contracts for carriage of goods by sea to or from parts of the United States in foreign trade   .   .   ."

McKernin continues to contend, as it did when opposing removal to this court, that this court has no jurisdiction to entertain the complaint because the events giving rise to the suit did not occur during an ocean voyage but "either in the packing of the goods or during periods of land transportation in the United States   .   .   ." (Affidavit of John Philas III, ¶ 3)  However, the second clause of the Form Bill of Lading which was part of the contract between the parties states that COGSA:

"shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier   .   .   ."

Apart from the fact that the contract between the parties establishes that rights and liabilities are governed by COGSA, Sections 1300 and 1312, cited above, clearly establish the applicability of the Act. As stated in *Crispin Co. v. Lykes Bros. Steamship Co.,* 134 F.Supp. 704, 706 (S.D. Tex.1955):

"The petition contains no mention of or reference to, the Carriage of Goods by Sea Act.  In separate paragraphs, allegations are made of breach of contract (Paragraph II) and of negligent handling of the cargo (Paragraph IV).  But the only duty which the defendant owes plaintiff springs from the shipper—carrier relationship; and despite the careful omission of any reference to the statute, and whether the complaint sound in tort or in contract, the obligations, responsibilities, and liabilities which result from the shipper—carrier relation, are circum-

scribed by terms of the statute.  When facts are alleged which bring the statute into play, a specific reference to it is unnecessary and immaterial." (Id. at 706)

Accord, *Georgia, Florida & Alabama Railway Co. v. Bush Milling Co.,* 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1960).  When a federal statute governs the rights of parties, the standards of the Act cannot be ignored by:

"casting [a] claim for relief in terms of common law negligence [or tort]   .   .   A holding to the contrary would permit any party to circumvent the restrictions of the [federal] Act through the insertion of a talismanic characterization of its claim as one for 'negligence.'  It is quite plain, however, that the declaration in 49 U.S.C. § 81 (and in § 1300 of COGSA)— 'bills of lading   .   .   .'  'shall be governed by this chapter'—must be taken to preclude alternative and supplementary liability under state law   .   .   .  The substance of the rule cannot be avoided by the form of the complaint." *G.A.C. Commercial Corporation v. Wilson,* 271 F.Supp. 242, 247 (S.D.N.Y.1967).

McKernin cites no authority to the contrary and we have found none.

Since the remedies provided in COGSA are exclusive, the first two causes of action must be dismissed.  Section 1304(5) states:

"In no event shall the carrier be liable for more than the amount of damage actually suffered."

The measure of damages for the delay in delivery is the difference between the price the goods actually brought and the price they would have brought had they been sold the day they should have arrived.  *The Styria,* 101 F.2d 728, 735 (2d Cir.), *rev'd on other grounds,* 186 U.S. 1, 22 S.Ct. 731, 46 L.Ed. 1027 (1902); *Atlantic Mutual Insurance Co. v. Poseidon Scheffahrt,* 313 F.2d 872 (7th Cir. 1963); *Interstate Steel v. Crystal Gem,* 317 F.Supp. 112 (S.D.N.Y.1970).

McKernin's first two claims ask recovery for the sale price of the brassware, but

McKernin concedes [1] that it recovered the entire price and, under the Act, there is no right to recovery where the full price has been received.

### III.

*Claim for Consequential Damages*

■ The third cause of action seeks to recover $50,000. in consequential damages for "loss of goodwill, future business and business reputation." Specifically, McKernin alleges that the brassware was ordered by its customers for the Christmas market, that defendants' failure to deliver the goods until December caused many customers to cancel their orders, and that its reputation as a dependable source has been seriously tarnished as a result of U.S. Lines' mishandling of the shipment.

To establish a right to recover for consequential damages, McKernin must prove that U.S. Lines was aware at the time the parties entered into their contract of the need to deliver the goods in time for Christmas sales. As stated in the landmark case of *Hadley v. Baxendale,* 9 Exch. 341 (1854):

> "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicat-

ed. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract."

Accord, *Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 544, 23 S.Ct. 754, 47 L.Ed. 1171 (1903); *Armstrong Rubber Co. v. Griffith,* 43 F.2d 689, 690–91 (2d Cir. 1930); *Texas Instruments, Inc. v. Branch Motor Express Co.,* 308 F.Supp. 1228 (D.Mass.1970); Williston, *Contracts* § 1357 (3d ed. 1968).

■ Although McKernin contends that summary judgment must be denied because of a dispute as to whether U.S. Lines knew of the need and reason for prompt shipment, it has produced no affidavits to contradict the defendants' categorical denial of such knowledge. The bill of lading merely describes the goods as "10 cases brassware." (Exs. I and II to U.S. Lines motion) and the parties submitted no documentary evidence which establish that U.S. Lines knew the special circumstances surrounding the shipment.

Despite the strict view recently reiterated by the Court of Appeals for this circuit of the rule that summary judgment is appropriate only where there is no dispute whatsoever as to material facts, Rule 56(e) provides:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

McKernin has not met this burden because it has submitted no affidavits or documents which show that U.S. Lines knew anything more than that the goods as described in the Bill of Lading were "brassware." Ac-

1. Deposition of Vincent McKernin, President of B. F. McKernin, pp. 29–30.

cordingly, summary judgment is granted dismissing the third cause of action unless within sixty days after prompt discovery by the plaintiff, McKernin submits affidavits or other proof which establish a genuine dispute as to whether U.S. Lines knew of the special need for prompt shipment. U.S. Lines shall have the opportunity to respond to any affidavits which are submitted.

## IV.

*Claim for Punitive Damages*

██ Even if the facts alleged in the complaint are accepted as true, they fail to meet the strict standard which New York law requires to support a recovery of punitive damages. The series of misdirected shipments, even if done, as McKernin suggests, "with gross disregard of plaintiff's rights" do not "imply a criminal indifference to civil obligations," and are not so "morally culpable, or  .  .  .  activated by evil and reprehensible motives," or "aimed at the public generally" as to justify an award of punitive damage. *Buitignol Construction Co. v. Allstate Insurance Co.,* 22 A.D.2d 689, 253 N.Y.S.2d 172 (2d Dept. 1964), *aff'd* 17 N.Y.2d 476, 266 N.Y.S.2d 982, 214 N.E.2d 162 (1968); *Walker v. Sheldon,* 10 N.Y.2d 401, 404–6, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961); see also *Caldwell v. New Jersey,* 47 N.Y. 282, 296 (1872); *Soucy v. Greyhound Corp.,* 27 A.D.2d 112, 113, 276 N.Y.S.2d 173, 175 (3d Dept. 1967).

In conclusion, summary judgment is granted dismissing the first, second and fourth causes of action. The third cause of action is dismissed unless within sixty days after prompt discovery by the plaintiff, McKernin submits proof as required by Rule 56(e) of the Federal Rules of Civil Procedure to establish a genuine dispute as to whether defendants knew of the special need for prompt shipment at the time the contract between the parties was executed. If such an affidavit is submitted within ten days thereafter, U.S. Lines will have the opportunity to respond.

It is so ordered.