NATIONAL AUTOMOTIVE PUBLICATIONS, INC., Plaintiff,

v.

UNITED STATES LINES, INC., Defendant.

78 Civ. 5891 (KTD).

United States District Court, S. D. New York.

Feb. 14, 1980.

Lawrence G. Nusbaum, Jr., New York City, for plaintiff.

Kirlin, Campbell & Keating, New York City, for defendant; Joseph K. Molloy, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This action was originally commenced by National Automotive Publications [herein-after referred to as "NAP"], in New York State Supreme Court, New York County, against United States Lines, Inc., charging breach of contract, negligence and wrongful detention of goods. Thereafter, the action was removed to this Court pursuant to 28 U.S.C. § 1441. Jurisdiction is alleged under the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300 et seq. [hereinafter referred to as "COGSA" or "the Act"].

Plaintiff is the publisher of National Sports Annual, an annual publication featuring articles, photos and advertising materials catering to motor racing fans. After some negotiations between NAP and a well known race track in England, NAP was granted a license to sell its 1978 Annual at the track during a two day motor car race. The race was scheduled for the 16th and 17th of September, 1978. In consideration for the license, NAP agreed to provide the track with exclusive coverage of the race by devoting a special section to the race in its 1979 Annual.

In August, 1978, NAP, through its managing agent and editor George Houraney, began preparation for the shipment of its publication to England for the race. After some investigation, NAP determined that shipment aboard one of defendant's vessels, the *American Argosy*, was satisfactory in that the vessel was scheduled to arrive in England prior to the race. Thus, on August 16th, the plaintiff delivered 18 cartons to the defendant for shipment to England. These cartons contained approximately 1,800 of plaintiff's 1978 Annual. These magazines were produced at a total cost of $2,178.

Upon delivery of the goods to defendant, a "dock receipt" was issued. The receipt contained the following language:

George Houraney Hold on dock will pick up September 14, 1978, *London England.*

(emphasis in original). It went on to provide:

RECEIVED the goods or the containers, vans, trailers, pallerized units or other packages said to contain the goods herein

mentioned, in apparent good order and condition, except as otherwise indicated herein, to be held and transported subject to all the terms contained in the carrier's regular long and short form bills of lading currently used in this service . . . Copies of such bill of lading and clauses may be obtained from the carrier on request and may be inspected at any of its offices.

The defendant's short form bill of lading provides, in pertinent part:

1. It is agreed that the receipt, custody, carriage, delivery and transshipping of the goods are subject to the terms appearing on the face and back hereof and also to the terms contained in the carrier's regular long form bill of lading currently used in this service . . . which shall govern the relations, whatsoever they may be, between shipper, consignee, carrier and ship in every contingency, wheresoever and whensoever occuring [sic] . . . Copies of the carrier's regular long form bill of lading and clauses presently being stamped or endorsed thereon are available from the carrier on request and may be inspected at any of its offices or its agents' offices.

. . . . .

3. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936 . . . .

Likewise, defendant's long form provides in part:

2. This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936 . . . the provisions of said Carriage of Goods by Sea Act of the United States shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier and during such time the carrier shall not be liable in any capacity whatsoever for any loss or damage howsoever or wheresoever occurring unless shown to be caused by the negligence of the carrier other than negligence in the management of the ship.

The goods were placed on board the *American Argosy* which sailed for England in late August and arrived at Felixstowe, England, on September 1, 1978. Plaintiff's goods were then discharged and arrived in London at the Barking Containerbase on September 4th. Thereafter, plaintiff's goods were unpacked by defendant and made available for pick up by plaintiff's representative subject to the payment of defendant's freight charges and compliance with English custom regulations.

On Thursday, September 14th, plaintiff's representative, George Houraney, arrived in England to take possession of the goods. As it developed, however, the proper custom clearance had not been obtained and, accordingly, the goods could not be removed. Despite several attempts by English Customs Clerk, Peter Gregory, to clear the goods, plaintiff was unable to take possession of the goods prior to the auto race at which they were to be distributed. In fact, when all clearance efforts were exhausted on Friday, September 15th, the day before the race, plaintiff's representative abandoned all efforts to gain the release of the goods. Thus, to date, the goods remain uncollected on the docks awaiting custom's clearance. In addition, the shipping charges for the goods remain unpaid.

The essence of the dispute between the parties concerns the terms of the bill of lading issued by defendant and the manner in which plaintiff's goods were handled by defendant upon arrival in England.

More particularly, plaintiff argues that the terms of the bill of lading differed substantially from those terms agreed upon by the parties and recited in the dock receipt. In this regard, plaintiff points to the fact that defendant was named for the first time, in the bill of lading, as the consignee of the goods. However, in the dock receipt, defendant was named only as the "exporter/carrier" whereas the plaintiff was designated "shipper/exporter" and, by reasonable inference, designated the consignee of the goods.

In addition, plaintiff argues that the destination of the goods was unilaterally changed by defendant from London, England, to the port of Felixstowe, England.

Plaintiff also argues that it was led to believe, through the representations of defendant's agents, that any and all custom requirements would be satisfied by defendant and plaintiff would simply be able to pick up its goods on the dock in England. However, upon plaintiff's arrival in England, the custom requirements had not been satisfied and it was impossible for plaintiff to remedy this situation in time for the goods to be cleared and ready for distribution at the race track.

In addition, plaintiff urges that whatever chance existed for a timely clearance of the goods was precluded by certain "custom snags". These, plaintiff argues, were caused by defendant's unilateral changes in the contract of carriage with respect to the designated consignee of the goods and their port of delivery.

Plaintiff concludes that the changes in the parties contract of shipment which appeared in the bill of lading constituted a breach of the agreement. In addition, plaintiff charges that defendant's failure to take the necessary steps to insure that plaintiff's goods cleared customs upon their arrival in England, constituted negligence and resulted in the wrongful detention of plaintiff's goods.

Defendant, of course, contends that pursuant to the provisions contained in the dock receipt, the terms contained in its bill of lading and the provisions of the COSGA were properly incorporated into the parties' contract of shipment. And, when these provisions are read together, the goods were properly shipped to Felixstowe and the custom formalities properly left for plaintiff's attention upon arrival.

Defendant now moves, pursuant to Fed. R.Civ.P. 56, for summary judgment on the ground that no triable issue of fact exists and it is thereby entitled to judgment as a matter of law.

Plaintiff has cross-moved for summary judgment, reargument of a prior discovery decision dated January 22, 1979 and seeks an order suppressing certain affidavits submitted by plaintiff as well as an order permitting an amended complaint to be filed adding a fourth claim for relief.

Before addressing each of the motions outlined above, a threshold question must be broached. That is—whether this Court has jurisdiction over the subject matter of the instant action.

Essential to the removal of the instant action to federal court was defendant's allegation that the action is governed by the provisions of COGSA and accordingly falls within the ambit of this Court's admiralty jurisdiction. Moreover, coverage by the Act is paramount in defendant's motion for summary judgment.

Plaintiff, in its opposition to the instant motion for summary judgment, vehemently urges that the terms of COGSA are not controlling. However, plaintiff never moved to remand this action to the state court for want of federal subject matter jurisdiction. Nor has plaintiff questioned the jurisdiction of this Court within the context of the instant motions. And yet, curiously, it persists in its position that COGSA, the sole federal jurisdictional predicate invoked herein, is somehow inapplicable.

Logic dictates that if the plaintiff's position is correct and COGSA is inapplicable, this action must be remanded to the state court from whence it came for want of federal jurisdiction. Only if federal subject matter jurisdiction exists will the instant motions be determined.

The pertinent sections of the Act provide:

Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter. (46 U.S.C. § 1300).

This chapter shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade. As used in this chapter the term "United States" includes its districts, territories, and possessions. The term "foreign trade" means the transportation of goods between the ports of the United States and ports of foreign countries. (46 U.S.C. § 1312).

Plaintiff and defendant both urge that coverage of COGSA is contingent upon whether or not the terms of defendant's bill of lading are incorporated by reference in the dock receipt issued to plaintiff. I disagree.

█ The Act, as is apparent from the provisions quoted above, exists quite independently of the terms and provisions of a particular bill of lading where, as here, the carriage by sea involves foreign trade.[1]

█ There can be no doubt that the shipment in issue involved foreign trade. Nor is there any dispute that a bill of lading was issued by defendant to plaintiff. Accordingly, the Act applies of its own force to the case at bar and federal jurisdiction exists. *Iligan International Corp. v. S.S. John Weyerhaeuser*, 372 F.Supp. 859, 865 (S.D.N.Y.), *aff'd*, 507 F.2d 68 (2d Cir. 1974) *cert. denied*, 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975). *See also B. F. McKernin & Co., Inc. v. United States Lines*, 416 F.Supp. 1068, 1071 (S.D.N.Y.1976), *quoting Crispin Co. v. Lykes Brothers Steamship Co.*, 134 F.Supp. 704, 706 (S.D.Tex.1955).

█ Furthermore, having determined that COGSA is a proper jurisdictional predicate in the case at bar, it is clear that plaintiff cannot avoid application of the Act's substantive provisions by couching the instant claims in terms of negligence, breach of contract and the wrongful detention of goods. Indeed, in *B. F. McKernin & Co.*, the Court held that where a federal statute is controlling, its provisions cannot

be circumvented by casting the claims in terms of common law negligence or tort. 416 F.Supp. at 1071. Thus, any claims which plaintiff does possess arising from the bill of lading issued by defendant are governed solely by the provisions of COGSA. *Id.*

The pertinent section of COGSA applicable to plaintiff's motion and defendant's cross-motion for summary judgment is § 1304. It provides in part that:

(2) Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from

. . . . .

(i) Act or omission of the shipper or owner of the goods, his agent or representative;

. . . . .

(q) Any other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage.

Plaintiff argues that under subdivision (q), quoted above, a question of fact exists with respect to whether its inability to clear customs before the auto race at which the magazines were to be distributed was the result of the "actual fault" of defendant or its agents. This, it reasons, precludes the granting of summary judgment for defendant.

Defendant, on the other hand, urges that it was under no obligation—contractual or otherwise—to arrange for custom clearance of plaintiff's goods upon arrival in England. Defendant also asserts that it fully performed its contract of shipment and cannot be held liable for plaintiff's failure to take the necessary steps to clear its goods through customs.

---

1. The incorporation by reference problem would obtain only if the goods were being transported between ports of the United States or its possessions. See 46 U.S.C. § 1312. *See*

*also Commonwealth Petrochemicals, Inc. v. S/S Puerto Rico*, 455 F.Supp. 310, 315 (D.Md. 1978).

In order for the goods in issue to obtain custom clearance in England, it was incumbent upon plaintiff to complete Custom Form C–10 and submit an invoice for the goods therewith.

However, English custom regulations further provide:

> Where the exact Customs charge cannot be assessed at the time the entry is presented, e. g. because full details of the goods are not available, clearance can usually be allowed on payment of a deposit equal to the potential duty on the full value plus any VAT payable, the deposit being adjusted later.
>
> .    .    .    .    .
>
> If clearance of the goods is required urgently and any of the foregoing documents needed for entry purposes have not been received or need correction alternative evidence, in the form of telex or similar messages, may be submitted instead and Customs will decide whether it can be accepted and if it requires subsequent confirmation.

Outline of Import Entry Procedure, Notice No. 465, ¶¶ 4 and 24 (June, 1979).

It is apparent, therefore, that there were at least three methods under which plaintiff was able to process his goods through customs. The question remains, however, whether any "actual fault" for plaintiff's failure to do so prior to the auto race was attributable to the conduct of defendant or its agents.

Rule 56 provides that a party is entitled to summary judgment only when there exist no genuine issue of material fact. It further provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In support of its motion, defendant has submitted numerous affidavits. These include the affidavits of defendant's employees who received plaintiff's goods and arranged for their shipment to England, and affidavits of two English customs clerks who had some knowledge of the goods in issue.

The affidavits of defendant's employees, Frank Pettrelli, Herman Cucinelli, Walter Fluhr and Brian John Hart, tend to establish that the goods were shipped aboard the *American Argosy* and enjoyed a routine and uneventful voyage to England. In particular, the Fluhr affidavit establishes that when, as in the case at bar, goods are designated to be picked up on the dock of a foreign port, generally there is no party at the foreign port to be notified of the arrival of the goods. Consequently, it is the custom in the trade, and certainly that of United States Lines, that the bill of lading covering such goods will designate the carrier, here United States Lines, as the nominal consignee. This insures that the goods will not be picked up and cleared through customs prior to the payment of shipment charges. Normally, the real consignee-owner of the goods will call for the goods, pay the shipping charges and clear the goods through customs.

In addition, the affidavit of Brian John Hart, defendant's agent in England, establishes that goods bound for London are routinely discharged at Felixstowe and, upon discharge, are sealed in containers by customs officials. Thereafter the goods are shipped overland to a depot, operated by Containerbase Ltd., located on the outskirts of London.

The Hart affidavit is of particular interest in that it sets forth the procedure to be followed by an owner of goods in order to obtain their release from Containerbase despite the fact that a carrier is designated as the nominal consignee thereof. The procedure is simply to pay the carrier for any shipping charges and the goods would be released subject to custom clearance.

These employee affidavits further state that plaintiff took no steps, at least through the offices of defendant, to pay for the shipping charges and obtain the necessary custom clearance. In fact, these affidavits

establish that these shipping fees remain unpaid and the goods remain unclaimed.

The affidavits of the English Customs officials, Christine Gale and Peter Gregory, concern the custom procedures with respect to goods imported from the United States. They establish that the normal time within which imported goods can be cleared through English customs ranges from a minimum of 48 hours to a maximum of 5 days. These affidavits also set forth the efforts employed by Mr. Gregory to obtain the custom clearance prior to the auto race on Saturday, September 16th.

For its part, plaintiff has submitted the affidavit of its agent, William George Houraney. In essence the affidavit charges, without benefit of elaboration, that by virtue of the alleged breaches of its contract of carriage with respect to the port of destination and consignee of the goods, it was unable to clear its goods prior to the auto race. It goes on to attack the credibility of Customs Agent Gregory on the grounds that it was somehow improper for him to undertake to clear the goods prior to the race when in fact such a release was impossible due to the time restraints. In addition, plaintiff criticizes the action taken by Mr. Gregory on its behalf, and charges that he acted negligently in attempting to obtain the custom release.

It is evident that the conduct of Mr. Gregory is totally irrelevant in considering what liability, if any, attaches to defendant for plaintiff's inability to clear customs in time to distribute its goods at the auto race. Indeed, even assuming that Gregory acted negligently with respect to plaintiff's goods, he was not an employee or agent of defendant. Thus, defendant cannot be charged with liability as a result of the acts or omissions of Gregory.

Accordingly, plaintiff's opposition to the instant motion amounts to nothing more than an allegation that the "custom snags"

allegedly resulted from defendant's conduct in handling the goods and designating itself as the consignee on the bill of lading.

Upon reviewing all the affidavits and memoranda submitted in connection with defendant's motion for summary judgment, I reluctantly must deny the motion. While it is apparent that COGSA is applicable to the case at bar and defendant is liable only for damages resulting from its "actual fault" and not those resulting from the omissions of plaintiff, two questions of fact remain. These are: (1) whether designation of United States Lines as consignee became part of the agreement between the parties, and, (2) if not, whether under the attendant circumstances the designation constitutes "actual fault" contributing to the loss or damage of plaintiff.[2]

However, this is an appropriate case for partial summary judgment. It is undisputed that plaintiff's relationship with defendant emanates solely from their contract of shipment as evidenced by the dock receipt and the bill of lading. It is equally clear, therefore, that the rights and liabilities of the parties are to be determined solely under COSGA which " 'preclude[s] alternative and supplementary liability under state law.' " *B. F. McKernin & Co., Inc. v. United States Lines, Inc., supra,* 416 F.Supp. at 1071, *quoting G.A.C. Commercial Corporation v. Wilson,* 271 F.Supp. 242, 247 (S.D.N.Y.1967). It follows, therefore, that the remedies provided in COGSA are exclusive.

Although I am willing to find that plaintiff's complaint is sufficient to state a claim under COSGA, especially in light of defendant's removal to this Court, given the exclusivity of COSGA's coverage, plaintiff's common law claims must be dismissed. Accordingly, defendant's motion for summary judgment is granted with respect to plain-

---

**2.** This, of course, assumes that the plaintiff can demonstrate that it has been damaged by the designation. *I merely note in passing that there appears to be a serious question as to the actual damage in this case. Indeed, after September 15th the plaintiff never attempted to* recover its goods from the dock. Thus, while the goods still retained some market value even *after the auto race, they were left by plaintiff,* apparently intentionally, on the dock until their value was destroyed by the passage of time.

tiff's common law claims and is denied insofar as plaintiff's complaint states a claim under COSGA.

Turning to plaintiff's cross-motion for summary judgment, it is denied. Although constrained from determining factual issues when considering a motion for summary judgment, I make the following observations.

■ It is apparent that plaintiff was served with the bill of lading soon after the goods left New York for England. However, no objection was ever made to the designation of defendant as consignee. While this does not establish, as a matter of law, that the designation became part of the agreement, it is strong evidence to that effect.

■ In addition, the fact that plaintiff made no efforts to have the goods cleared through customs although delivered and available in England for custom's clearance at least as of September 7th, indicates that plaintiff's own conduct contributed substantially to whatever damage it suffered as a result of the custom snags.

In sum, the two factual disputes, which plaintiff has just barely placed in issue, are all that stand between it and judgment for defendant. Thus, I am directing that all discovery be completed within thirty (30) days hereof and the parties be ready for trial as to the issues delineated above.

■ Turning to the balance of plaintiff's motions, these too must be denied. First, there is no legal basis upon which plaintiff may amend its complaint to state a valid claim other than its claim under COSGA. Indeed, given the exclusive nature of the remedies under COSGA, whatever common law theories plaintiff may assert, these are pre-empted by virtue of COSGA. *B. F. McKernin & Co., Inc. v. United States Lines, supra,* at 1071. Thus, amendment of the complaint to add a fourth common law claim would be a futile act, and accordingly leave to amend must be denied.

■ Turning to plaintiff's motion for reargument, it is denied as untimely. In

the discovery ruling which plaintiff seeks to attack, Magistrate Bernikow, to whom the motion was referred pursuant to 28 U.S.C. § 636(b), included in his decision that any appeal thereof was to occur "within ten (10) days of receipt of a copy of [the decision]." No appeal was ever taken and plaintiff cannot now circumvent this direction by couching its "appeal" in terms of a motion for reargument.

Finally, plaintiff's motion to suppress the affidavits of Christine Gale, Peter Gregory and Brian John Hart must be denied.

Plaintiff urges that a protective order issued by Magistrate Bernikow, which in essence precluded the production by defendant of any of its employees based in England, was premised upon the belief that the testimony of such employees would not be offered to this Court. Plaintiff concludes that since such testimony has been offered in support of defendant's motion, it must be suppressed.

■ Even assuming that plaintiff's interpretation of the protective order is accurate, with respect to Gale and Gregory, they are not employees of defendant and plaintiff is not entitled to depose them as such. Their status is, at best, as third-party witnesses.

In addition, as to Hart, while concededly an employee of defendant, the affidavit need not be suppressed. In light of the fact that plaintiff's COSGA claim has survived the instant motion for summary judgment, suppression is unnecessary. If plaintiff wishes to depose Hart in the future, it should notice such a deposition in accordance with the time allotted for discovery herein.

Accordingly, defendant's motion for summary judgment is denied as are plaintiff's cross-motions for summary judgment, reargument and suppression; partial summary judgment is granted with respect to plaintiff's common law claims.

SO ORDERED.