**Warwick JONES, Plaintiff,**

v.

**COMPAGNIE GENERALE MARITIME, Defendant.**

**Civ. A. No. 494–150.**

United States District Court, S.D. Georgia, Savannah Division.

April 4, 1995.

Edwin D. Robb, Jr., Savannah, GA, for plaintiff.

Gustave R. Dubus, III, Chamlee, Dubus & Sipple, Savannah, GA, for defendant.

### *ORDER*

EDENFIELD, Chief Judge.

Now before the Court is a motion by Defendant Compagnie Generale Maritime ("CGM") for summary judgment on the issue of punitive damages. For reasons discussed below, the Court **GRANTS** the motion.

### I.

■ The purpose of summary judgment is to explore the evidence and determine whether there is a genuine issue of material fact requiring a trial. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment is granted when no such issue is discovered and the movant is entitled to judgment as a matter of law. *Great Lakes Dredge & Dock Co. v. Miller*, 957 F.2d 1575, 1578 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Summary judgment is appropriate only when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Tidmore Oil Co. v. BP Oil Co.,* 932 F.2d 1384, 1387–88 (11th Cir.), *cert. denied,* 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

■ After the movant successfully discharges his initial burden of demonstrating an absence of material issues of fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53, the burden shifts to the nonmovant to establish, with evidence beyond the pleadings, that there indeed exists an issue material to the nonmovant's case. *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To defeat a properly supported motion for summary judgment the nonmovant must present "affirmative evidence" of material factual conflicts. *Id.* at 257, 106 S.Ct. at 2514. If the nonmovant's response to the summary judgment motion consists of nothing more than conclusory allegations, the Court must enter summary judgment for the movant. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989). Where the parties' factual statements conflict or inferences are required, the Court will construe the facts in a light most favorable to the nonmovant. *Barnes v. Southwest Forest Industries,* 814 F.2d 607, 609 (11th Cir.1987).

## II.

Plaintiff Warwick Jones ("Jones") contracted with an agent of CGM, a French ship owner, to transport his family's personal effects and automobile from Brisbane, Australia to Savannah, Georgia. The cargo was stored in two containers, both of which were sealed at the port in Australia and placed on the CGM RACINE in a location accessible to the ship's crew.

During discharge in Savannah United States Customs officials noticed that the seal on the container holding Jones' personal effects was missing. Upon further inspection of both containers it was discovered that several items were missing and that other items, including the automobile, were damaged. Found in the containers were footprints, seawater damage, and foreign objects, including a pack of French cigarettes, a fleece-lined glove, a pipe, and a fish hook.

Because CGM's vessel had custody of the cargo from receipt in Brisbane to discharge in Savannah, Jones concluded that crew members stole the goods. He then filed suit in state court for compensatory and punitive damages. CGM soon removed the action to this Court.

CGM denies that goods were stolen from the containers, and highlights some details implying that if pilferage indeed occurred, non-crew members had ample opportunity to commit it during the vessel's journey to the United States. The CGM RACINE docked at Lae, New Guinea; Jakarta, Indonesia; Columbo, Sri Lanka; Genoa, Italy; Marseilles, France; Antwerp, Belgium; Hamburg, Germany; and LeHavre, France, on its way to Savannah from Brisbane. To facilitate transport of other cargoes, at Le-Havre—a CGM hub—the two containers were unloaded and then restowed to a different location within the vessel. Zeigler Affid. ¶ 4. CGM further contends that even if the crew pilfered the goods, neither the masters and officers of the vessel nor CGM managerial personnel were aware of it.

As to any cargo damage, CGM says that it either occurred prior to transport or was due to inadequate packing and failure to properly secure the goods during the ocean voyage.

## III.

In its motion CGM argues that Jones' claim for punitive damages should be stricken because such a claim is not available under current law, and in the alternative, because he does not present sufficient evidence to sustain it.

### A.

This action is governed by the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300, et seq., which covers every bill of lading "for carriage of goods by sea to or from ports of the United States in foreign trade." *Id.* § 1312. COGSA was "clearly designed to protect the shipping industry," *Heri v. Fritz Companies, Inc.,* 841 F.Supp. 1188, 1191 (N.D.Ga.1993), and regulates the liability of carriers on claims in both tort and contract. *E.g., Crispin Co. v. Lykes Bros. S.S. Co.,* 134 F.Supp. 704, 706 (S.D.Tex.1955). As federal legislation in admiralty, it preempts common law in this area, e.g., *National Automotive Pub. v. United States Lines,* 486 F.Supp. 1094, 1099, 1101–02 (S.D.N.Y. 1980), and provides the exclusive remedy for loss of cargo. *See id.; B.F. McKernin & Co. v. United States Lines,* 416 F.Supp. 1068, 1071 (S.D.N.Y.1976). COGSA's preemption of general maritime and state law remedies extends to claims for conversion. *Reisman v. Medafrica Lines,* 592 F.Supp. 50, 52 (S.D.N.Y.1984) (stating that "breach of contract, negligence, and conversion claims are

the common law equivalents of actions for which COGSA was meant to be an exclusive definition of liability in the shipper-carrier context"); *B.F. McKernin*, 416 F.Supp. at 1071 (no alternative liability under general maritime or state law for contract breach or conversion due to delayed delivery).

**B.**

■ The cases squarely addressing the subject have found that despite § 1304(5) of COGSA, which states that "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained," willfully tortious conduct is sufficient to allow punitive damages against a carrier in an action governed by COGSA. *See Armada Supply v. S/T Agios Nikolas*, 639 F.Supp. 1161, 1162–65 (S.D.N.Y.1986) (awarding punitive damages in COGSA action where carrier committed a series of intentionally tortious acts); *Seguros Banvenez S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 861 (2d Cir.1985) (cargo case acknowledging availability of punitive award). *Armada* relied on dicta in *Thyssen, Inc. v. S/S Fortune Star*, 777 F.2d 57, 63 (2d Cir.1985), in which Judge Friendly, relying on the Second Restatement of Contracts, Farnsworth, and Corbin, observed that punitive damages would be available in maritime contract actions where there was a contract breach that also constituted an independent, willful tort. *See Armada*, 639 F.Supp. at 1162. Once characterized in tort, general maritime law outside of COGSA supports awarding punitive damages for some torts committed on navigable waters. *See, e.g., The Amiable Nancy*, 16 U.S. (3 Wheat) 546, 558–59, 4 L.Ed. 456 (1818) (piracy case, observing that punitive damages are an appropriate response to "lawless misconduct" or "gross and wanton outrage"); *In re Merry Shipping, Inc.*, 650 F.2d 622, 624, 625 (5th Cir.1981) (wrongful death action, reviewing cases and finding punitive damages available

under general maritime law where there is willful and wanton misconduct);[1] *Hines v. J.A. Laporte, Inc.*, 820 F.2d 1187, 1188 (11th Cir.1987) (following *In re Merry*). *See also CEH, Inc. v. F/V SEAFARER*, 148 F.R.D. 469, 473 (D.R.I.1993) (tort action, acknowledging claim for punitive damages under general maritime law "based upon allegations of willful, reckless and malicious misconduct"). *Cf. B.F. McKernin*, 416 F.Supp. at 1073 (finding that under New York law, negligence, even amounting to "gross disregard for plaintiff's rights," is insufficient to warrant punitive damages against sea carrier).

Applying *Armada* and *Thyssen* to the case at bar, if CGM's crew did break into the cargo containers and steal Jones' belongings, this conduct would constitute a breach of contract that would also be intentional misconduct. The conduct would amount to, in its tortious incarnation, conversion. Thus expressed, such behavior would expose its perpetrators to the punitive liabilities of tortfeasors. *See* **Restatement (Second) of Contracts** § 355 (1979) (punitive damages not recoverable for contract breach unless conduct "is also a tort for which punitive damages are recoverable," i.e., an intentional or extremely reckless tort). In maritime tort cases, general maritime law applies, and that law, like state law, recognizes punitive claims. *See In re Merry*, 650 F.2d at 624–25. *Compare* O.C.G.A. § 13–6–10 (no punitive damages for breach of contract) *with* § 51–12–5.1(b) (allowing punitive damages in tort actions where defendant's behavior is willful, malicious, or exhibits sufficient disregard for the rights of others).

The problem with this analysis is that *Thyssen* and *Armada* create an unjustifiably low standard for imposition of punitive damages in cases governed by COGSA. By requiring only willfully tortious conduct, those cases underestimated both the reach and exclusivity of COGSA.[2] *See* David M. Blach-

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. The *Merry* decision, in fact, was an appeal from this Court.

The Fifth Circuit relied on the *Merry* decision in *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir.

1989), a maritime negligence action in which the court interpreted the "willful and wanton misconduct" language as gross negligence, malice, or criminal indifference.

2. One recent decision has even interpreted *Thyssen* as allowing punitive damages in maritime contract cases where the tortious conduct was not willful. In *Gamma–10 Plastics v. American*

man, *Recent Development: Punitive Damages Under the Carriage of Goods by Sea Act—Armada Supply, Inc. v. S/T Agios Nikolas*, 62 Wash.L.Rev. 523, 541 (1987). As stated in part III.A, *supra*, prior cases acknowledge that COGSA encompasses actions in both contract and tort—including conversion. *See, e.g., Crispin Co.*, 134 F.Supp. at 706 ("[W]hether the complaint sounds in tort or contract, the obligations, responsibilities, and liabilities which result from the shipper-carrier relation are circumscribed by terms of the statute."). The "willful tort" standard improperly limits COGSA's reach by suddenly allowing a common law remedy on claims, like conversion, for which COGSA has long been recognized as the exclusive remedy.

 In order to fall outside of COGSA's reach and within that of general maritime remedies, behavior should be something *worse* than merely an intentional tort. This Court finds that criminally culpable behavior fits the bill, and will allow a plaintiff to claim punitive damages against a carrier in actions governed by COGSA if he can present clear and convincing evidence of criminally culpable behavior. These cases will be few, and clearly identifiable. In fashioning this rule

the Court does recall that COGSA § 1304(5) says that "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained." But while this Court believes in applying statutes according to their "plain language," *Pennsylvania Dep't of Welfare v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990), the language above cannot bar punitive damages in every single law suit involving goods carried at sea. Clearly it applies to tortious conduct, but a reading of COGSA as a whole shows that it does not extend to criminally culpable conduct. Cases of theft and other intentional criminal wrongdoing were beyond the scope of what Congress could have reasonably intended to govern with these provisions, and so in those instances common law maritime remedies, like punitive damages, are not preempted by COGSA.[3] For discussion on this point, see Blachman, *Recent Development*, 62 Wash.L.Rev. at 542.

 In its criminal incarnation, the alleged conversion in this case amounts to blatant theft. It would be absurd to read COGSA as limiting carrier liability to only compensatory damages no matter how intentionally, egregiously, criminal the conduct of that carrier.[4] *See American Trucking Ass'n*

*President Lines*, 32 F.3d 1244, 1257 (8th Cir.1994), a case of gross negligence in the damage and loss of cargo, the court reversed a district court ruling denying plaintiff's motion to amend its complaint to include a claim for punitive damages. The Eighth Circuit relied on maritime tort cases allowing punitive damages, e.g., *Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir.1988) (wrongful death action arising from collision in navigable waters), and then profoundly misread *Thyssen* as permitting punitive damages in maritime contract actions where the defendant's actions constituted an independent tort, willful or not. *Compare Thyssen*, 777 F.2d at 63 (stating that "the most common exception" to the common law bar on punitive damages for contract breach "is where the breach constitutes an independent, *willful* tort") (emphasis added) (citing **5 A. Corbin, Corbin on Contracts** § 1077 (1964 & Supp.1992), which notes recent trend to permit punitive damages in some contract actions when the breaching party acted with "[t]he state of mind which accompanies an intentional tort"). By reading *Thyssen* as it did, the *Gamma-10* court all but authorized punitive claims in the majority of cargo damage cases.

**3.** There is nothing in the legislative history of the Act to indicate that Congress ever addressed the

issue of punitive damages when drafting COGSA. *See Leather's Best Int'l., Inc. v. M/V LLOYD SERGIPE*, 760 F.Supp. 301, 313 (S.D.N.Y.1991); *Armada*, 639 F.Supp. at 1164–65 (reviewing legislative history).

**4.** Because COGSA does not provide a remedy for criminally culpable behavior, some plaintiffs have sought relief by extension of the deviation doctrine. Courts have refused such an extension. *E.g., B.M.A. Indus. v. Nigerian Star Line*, 786 F.2d 90, 92 (2d Cir.1986) (finding that misdelivery of cargo is not deviation even if prompted by a bribe); *Italia Di Navigazione S.P.A. v. M/V Hermes I*, 724 F.2d 21, 22 (2d Cir.1983) (nondelivery of cargo due to theft is not a deviation depriving carrier of one year limitation period under COGSA); *Iligan Integrated Steel Mills v. S/S John Weyerhaeuser*, 507 F.2d 68, 72 (2d Cir.1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975) (deviation doctrine inapplicable to gross negligence or willful or wanton misconduct). As a result, while stowing goods on deck is a deviation depriving the carrier of the liability limitations in COGSA, e.g., *Encyclopaedia Britannica v. S/S Hong Kong Producer*, 422 F.2d 7, 18 (2d Cir.1969), theft and bribery bear no such penalty.

*v. ICC,* 659 F.2d 452, 459 (5th Cir.1981), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983) (plain language of statute should be followed unless it yields an absurd result as applied). *Cf. Solis–Ramirez ·v. United States Dept. of Justice,* 758 F.2d 1426, 1431 (11th Cir.1985) (courts' foremost duty is to give effect to intent of Congress). The statute is a framework for balancing carrier and shipper responsibilities in international trade, not a license for piracy.

■■■■ Finally, as this case demonstrates, much behavior is both "tortious" and "criminal," and falls within both the "willful tort" and "criminally culpable" standards. As long as the act fits the "criminal" criteria, punitive damages should be allowed. "Criminally culpable behavior" means behavior revealing both a reckless indifference (at least) to the rights of others, and an intent to commit criminal acts. "Reckless indifference" is the common law minimum standard often used to determine the propriety of a punitive damages award, e.g., *Dorsey v. Honda Motor Co.,* 655 F.2d 650, 657 (5th Cir. 1981), *modified,* 670 F.2d 21 (1982); the intent to commit a criminal act is what removes behavior from COGSA's reach, since it represents non-commercial activity that Congress did not intend to address. *Cf. Thyssen,* 777 F.2d at 63 (noting that in commercial law the amount required to compensate for loss is easily quantified, while in tort law injuries are far more difficult to value).

■■■ In the instant case "conversion" could mean many things. *See, e.g.,* **Black's Law Dictionary** 300 (5th ed. 1979); **William L. Prosser & W. Page Keeton, et al., The Law of Torts** § 88, et seq. (5th ed. 1984). Simple conversion, like repeated misdelivery of cargo, *B.F. McKernin,* 416 F.Supp. at 1070, would not meet the standard of criminality because while it evidences a disregard for the plaintiff's rights, it "does not imply a criminal [reckless] indifference to civil obligations," *id.* at 1073, or intent to commit criminal acts. However, breaking into cargo containers, rifling through their contents, and then stealing various items certainly implies both.

Under the "criminally culpable" standard adopted here, the conduct alleged by Jones would expose CGM to punitive liability.

### C.

CGM does note one case in which the court explicitly held that the language in § 1304(5) of COGSA bars punitive awards, see *Cosmos U.S.A., Inc. v. United States Lines,* 1983 A.M.C. 1172 (N.D.Cal.1980), but like the district court in *Armada,* this Court finds that case unpersuasive. Beyond the difficulties noted in *Armada,* 639 F.Supp. at 1163, the cases cited in *Cosmos,* like those cited above, support punitive awards where the carrier engages in willfully tortious conduct. *See Cosmos,* 1983 A.M.C. at 1173 (relying on *B.F. McKernin,* where court followed New York state law rules that allow punitive damages for intentional wrongdoing). *Cosmos* does not support CGM's attempt to avoid punitive damages in this case.

### IV.

■■■ Having established that punitive damages are generally available to plaintiffs alleging criminal misconduct by carriers transporting goods at sea, the Court finds that those damages are not recoverable in this case. Under general principles of tort law, punitive damages cannot be recovered from a principal for actions of its agent, unless the principal authorized the actions, approved the actions, was somehow reckless in allowing them to happen, or the agent was acting within the scope of his employment. *See* **Restatement (Second) of Torts** § **909**; *Lake Shore & Michigan Southern Railway Co. v. Prentice,* 147 U.S. 101, 107–08, 13 S.Ct. 261, 263, 37 L.Ed. 97 (1893) (principal cannot be held liable for punitive damages "merely by reason of wanton, oppressive or malicious intent on the part of the agent"). *See also Archer v. Trans/American Services,* 834 F.2d 1570, 1572 (11th Cir.1988) ("Federal maritime law embraces the principles of agency.").

■■■ Many admiralty courts take a view of principal liability more restrictive

than their state court counterparts.[5] For example, in *U.S. Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1148 (6th Cir.1969), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2162, 26 L.Ed.2d 542 (1970), the court held:

> We think the better rule is that punitive damages are not recoverable against the owner of a vessel for the act of the master unless it can be shown that the owner authorized or ratified the acts of the master either before or after the accident. Punitive damages also may be recoverable if the acts complained of were those of an unfit master and the owner was reckless in employing him.

*See also Regina M. Muratore v. M/S SCOTIA PRINCE*, 1993 A.M.C. 2933, 2943–45, 845 F.2d 347 (1st Cir.1988) (adopting same rule). The Fifth Circuit adopted this rule in *In re P & E Boat Rentals, Inc.*, 872 F.2d 642, 652 (5th Cir.1989), while elaborating upon the holding in *In re Merry* that punitive damages are available for maritime torts:

> We hold simply that punitive damages may not be imposed against a corporation when one or more of its employees decides on his own to engage in malicious or outrageous conduct. In such a case, the corporation itself cannot be considered the wrongdoer.

This principle is well considered, especially in the maritime context, and this Court follows it.[6] The retribution and deterrence objectives of punitive awards are not achieved "when courts drop the punitive damage hammer on the principal for the wrongful acts of [an employee]." *P & E Boat Rentals*, 872 F.2d at 652. The employee alone committed the wrongful acts, while the principal may not condone or encourage any behavior of the kind.

In the instant case, after reviewing the pleadings, depositions, and affidavits,[7] it is clear that Jones has no direct evidence that the crew of the CGM RACINE pilfered goods from the containers, much less evidence that CGM itself authorized that behavior or even knew about it. While the circumstantial evidence of conversion is enough to defeat a motion for summary judgment on that claim, CGM's motion is about holding it—the principal—liable for punitive damages because of alleged acts of the RACINE's crew—its employees. Nothing in the record supports the argument that CGM policy or personnel authorized the alleged pilferage or that such behavior was within the scope of the crew's employment.[8] Beyond Jones' pleadings, the record is absolutely silent on that issue. Consequently, Jones cannot meet his burden in this matter, *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. at 2514–15, and CGM cannot be held liable for punitive damages.

### V.

Because the Plaintiff cannot establish a link between the Defendant and the alleged misconduct of its agents, the motion for sum-

---

5. Under Georgia common law, principals are liable for punitive damages if their agents acted in the course of or in connection with their employment and the agents' behavior itself warranted a punitive award. *See Sightler v. Transus, Inc.*, 208 Ga.App. 173, 174, 430 S.E.2d 81 (1993) (quoting *American Fidelity & Casualty Co. v. Farmer*, 77 Ga.App. 166, 178, 48 S.E.2d 122 (1948)).

6. The majority of courts actually do not follow it, and award punitive damages against principals for the tortious acts of their agents regardless of approval or ratification by the principal. *Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 n. 14, 102 S.Ct. 1935, 1947 n. 14, 72 L.Ed.2d 330 (1982) (listing cases). A significant minority, like the Fifth Circuit in *P & E Boat Rentals*, relies on *Lake Shore*, 147 U.S. at 107–08, 13 S.Ct. at 263, and holds that a master cannot be held liable for acts of his agent when the master has neither authorized nor ratified such conduct. This position is similar to the Restatement (Second) of Torts position, but is a bit more restrictive. *See also* **William L. Prosser & W. Page Keeton, The Law of Torts 12** (5th ed. 1984).

7. The Court has reviewed the depositions of U.S. Customs agent Edward Henry, Georgia Ports Authority investigator William O'Sullivan, and Plaintiff Jones. It has also considered the affidavits of a stevedore, James Bradley Zeigler, a mover who helped unload the cargo containers, Russell Bowley, and Plaintiff himself.

8. In fact, Edward Henry, the U.S. Customs inspector who examined the cargo containers containing Jones' goods, testified that in the course of his work he finds no more pilferage of goods carried on CGM vessels than on those of any other carrier. Henry Dep. at 22. *See also* O'Sullivan Dep. at 29 (same).

mary judgment on Plaintiff's claim for punitive damages is **GRANTED.**

SO ORDERED.