**MILLER EXPORT CORP., Plaintiff,**

v.

**HELLENIC LINES, LTD., Defendant.**

**No. 81 Civ. 7882 (WCC).**

United States District Court,
S. D. New York.

March 23, 1982.

Epstein Furlong Greebel & Rosenburg, Mineola, N. Y., for plaintiff; Elliott M. Epstein, Madeleine L. Kane, Mineola, N. Y., of counsel.

Evans, Koelzer, Marriott, Osborne & Kreizman, New York City, for defendant; George J. Koelzer, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This action for negligence, breach of contract and fraudulent misrepresentation was commenced in New York County Supreme Court on November 25, 1981, and removed to this Court, subject matter jurisdiction being predicated upon diversity of citizenship, 28 U.S.C. § 1332. Presently before the Court are motions (1) by plaintiff Miller Export Corporation ("Miller") to strike the nine affirmative defenses contained in the answer of defendant Hellenic Lines, Limited ("Hellenic"), Rule 12(f), F.R.Civ.P., and (2) by Hellenic for summary judgment on the basis of its statute of limitations defense, Rule 56, F.R.Civ.P.

*The Allegations of the Complaint*

According to the complaint, on December 13, 1978, Miller, an international seller and distributor of goods, received an order from its Pakistani customer Grand Batteries Limited ("Grand") for certain battery containers and battery covers. Grand required that the containers and covers be delivered together in one delivery to Pakistan under a single letter of credit and documentation.

Accordingly, by May 8, 1979, Miller retained Hellenic, a common carrier, to transport the containers and covers to Pakistan aboard a vessel to be selected by Hellenic. Thereafter Hellenic advised Miller that the cargo would leave from Philadelphia aboard the vessel Hellenic Sea. Relying thereon, Miller caused its supplier of covers to deliver the covers to Hellenic at the appropriate Philadelphia pier.

At about that time, however, Hellenic advised Miller that the Hellenic Sea would in fact depart from New York City. Accordingly, Miller caused its supplier of containers to deliver the containers to the appropriate pier in New York. As to the covers already delivered to Philadelphia, Hellenic agreed to transport them to New York by truck at its own expense.

In fact, according to Miller, contrary to this arrangement and contrary to the requirements of Grand, Hellenic shipped the containers aboard the Hellenic Sea from New York on May 21, 1979 and delivered the covers aboard the Hellenic Faith from Philadelphia on May 30, 1979. The requisite documentation for importation of both the containers and covers was sent with the earlier shipment of containers, as a result of which the covers arrived without documentation, were denied entry and are believed to have been impounded. Consequently, Grand received only the containers, which are of virtually no commercial use without the covers, causing Grand damage for which it holds Miller responsible. Nevertheless, Hellenic obtained full payment by submitting documentation representing that both the containers and covers had been shipped from New York aboard the Hellenic Sea.

In its first cause of action, Miller claims that Hellenic was negligent in its failure (1) to advise Miller of the proper port of departure, and (2) to transport the covers from Philadelphia to New York. In its second cause of action, Miller claims that Hellenic breached its contract to transport the covers from Philadelphia to New York. And in its third cause of action, Miller alleges that Hellenic fraudulently misrepresented (1) that it would transport the covers from Philadelphia to New York, and (2) that the containers and covers were both aboard the Hellenic Sea for shipment from New York to Pakistan.

*Affirmative Defenses*

The nine affirmative defenses which are the subject of Miller's motion to strike may be summarized as follows:

(1) that any loss or damage to the goods was not caused by Hellenic;

(2) that the Hellenic Sea was seaworthy and otherwise in conformity with the provisions of the United States Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1300 *et seq.*;

(3) that Hellenic is not responsible for any damage to the goods which occurred while they were aboard the vessel;

(4) that any loss or damage to the cargo was caused by the perils, dangers and accidents of the sea for which Hellenic is not responsible under COGSA;

(5) that proper notice and commencement of the suit were not timely under COGSA;

(6) that Hellenic's liability is limited to $500 per package pursuant to COGSA;

(7) that any shortage or damage existing at the time of delivery was due to causes for which Hellenic is not responsible;

(8) that the suit is time-barred pursuant to 46 U.S.C. § 1303(6); and

(9) that the complaint fails to state a claim upon which relief can be granted.

*Parties' Contentions*

In its motion to strike, Miller contends:

(1) that since its three causes of action are common law causes of action, Hellenic's maritime defenses numbered one through eight are irrelevant;

(2) that since its three causes of action relate to pre-loading events, COGSA is inapplicable, and Hellenic's defenses numbered two, four, five, six and eight are inapplicable;

(3) that since Miller does not allege any loss or damage occurring at sea, Hellenic's defenses numbered one, two, three, four and seven are irrelevant; and

(4) that since the complaint adequately pleads claims of negligence, breach of contract and fraud, the ninth defense is without foundation.

In its memorandum in response to Miller's motion to strike and in support of its own motion for summary judgment, Hellenic argues:

(1) that Miller's claims are governed by COGSA;

(2) that Miller's claims are accordingly barred by the one-year COGSA statute of limitations; and

(3) that Hellenic's ninth defense is valid because of Miller's failure to plead its own freedom from contributory negligence.

*Discussion*

The central issue presented by these motions is whether Miller's claims are governed by the common law or by COGSA; *i.e.*, whether COGSA controls what Miller characterizes as "pre-loading" events.

A starting point for this analysis is the statute itself. 46 U.S.C. §§ 1302 and 1312 limit COGSA's application to all "contracts for carriage of goods by sea." In turn, 46 U.S.C. § 1301(e) defines the term "carriage of goods" as covering the "the period from the time when the goods are loaded on to the time when they are discharged from the ship." And 46 U.S.C. § 1311 provides that "[n]othing in this chapter shall be construed as superseding . . . any other law which would be applicable in the absence of this chapter, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship."

The statute on its face thus provides ample support for the proposition advanced by Miller that COGSA does not control the carrier's pre-loading liability and leaves undisturbed any other law applicable to such period. That proposition, at least as a general matter, also finds support in the case law. See, *e.g.*, *Atlantic Banana Co. v. M.V. "Calanca,"* 342 F.Supp. 447 (S.D.N.Y.1972), aff'd, 489 F.2d 752 (2d Cir. 1974); *Toho Bussan Kaisha, Ltd. v. American President Lines,* 155 F.Supp. 886 (S.D.N.Y.1957), aff'd, 265 F.2d 418 (2d Cir. 1959); *Middle East Export Co. v. Concordia Line, Skibs A/S Hilda Knudson,* 64 Misc.2d 270, 314 N.Y. S.2d 390 (Civil Ct. 1970), modified on other grounds, 71 Misc.2d 365, 336 N.Y.S.2d 217 (1st Dept. 1972). Miller thus contends that since each of his claims arises from pre-loading events, they are governed by common law principles and not by COGSA.

Notwithstanding these authorities, the Court is persuaded that COGSA does govern the claims here asserted by Miller. Although the complaint contains three causes of action, there are in reality five distinct claims:

(1) negligent failure to advise Miller of the proper port of departure;

(2) negligent failure to transport the covers from Philadelphia to New York;

(3) breach of contract by failure to transport the covers from Philadelphia to New York;

(4) fraudulent misrepresentation that Hellenic would transport the covers from Philadelphia to New York; and

(5) fraudulent misrepresentation that the covers were aboard the Hellenic Sea for shipment from New York.

■ As to the first and fifth of these COGSA applies *ex proprio vigore*. Although colored as allegations of negligence and fraud, these claims presuppose an obligation properly to designate the port and to ship the covers along with the containers aboard the Hellenic Sea, respectively. The only duty owed by Hellenic from which these presumed obligations arose is the duty incident to the shipper-carrier relationship, *i.e.*, Hellenic's duty under its agreement to ship the containers and covers to Pakistan. Plainly, Hellenic's responsibilities under this agreement to carry goods by sea in foreign trade is governed by COGSA, and this Court has held that the exclusive application of COGSA cannot be avoided by couching claims in terms of negligence or other common law causes of action. *National Automotive Publications v. United States Lines, Inc.*, 486 F.Supp. 1094, 1099 (S.D.N.Y. 1980); *B. F. McKernin & Co., Inc. v. United States Lines, Inc.*, 416 F.Supp. 1068, 1071 (S.D.N.Y.1976). Accordingly, since Miller's claims of negligence and fraud arose solely from Hellenic's obligation as ocean carrier, COGSA controls even though the purported fraud or negligence is alleged to have occurred prior to loading or subsequent to discharge. *B. F. McKernin & Co., Inc.*, 416 F.Supp. at 1071 (COGSA applied even though events giving rise to suit alleged to have occurred either in the packing of the goods or during post-discharge periods of land transportation).

As to Miller's remaining three claims—negligence, breach of contract and fraud in connection with Hellenic's failure to transport the covers from Philadelphia to New York—the question of the application of COGSA is a much closer one. As to these claims, it is at least a colorable argument that Hellenic's obligations upon which the claims are based arose not from the contract to carry goods by sea, but rather from a *pre-loading* agreement to transport the covers *by land* from Philadelphia to New York. Miller's argument, however, will not withstand more than superficial scrutiny.

■ Although COGSA applies *ex proprio vigore* to the period between loading and discharge, it may be extended to the entire period during which the goods are in the custody of the carrier. 46 U.S.C. § 1307 provides:

"Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea."

In the instant case, it is not disputed that the bills of lading in connection with both voyages incorporated the provisions of COGSA (as well as a one-year statute of limitations), and provided for the governance of COGSA prior to loading and subsequent to discharge and throughout the period the goods were in the custody of Hellenic. Such a provision is effective to make COGSA applicable to the entire period of custody by the carrier. See, *e.g., B. F. McKernin & Co., Inc.*, 416 F.Supp. at 1071 (bill of lading applies COGSA even to land transportation of goods in custody of carrier); *Mackey v. United States*, 83 F.Supp. 14, 18–19 (S.D.N.Y.1948), *aff'd*, 197 F.2d 241 (2d Cir. 1952). Further, it is here not disputed that the covers came into the custody of Hellenic when they were delivered to the pier at Philadelphia, at which time Hellenic issued a dock receipt for the goods. Since Hellenic's alleged failure to transport the covers to New York for ocean shipment occurred after it took custody of the covers, under the provisions of the bill of lading any claim arising therefrom is governed by COGSA.

Miller seeks to avoid this result by focusing upon the fact that the agreement by Hellenic to transport the covers from Phila-

delphia to New York was made prior to the issuance of the dock receipts and prior to the issuance of the bills of lading. Miller thus attempts to partition his dealings with Hellenic into two purportedly distinct contracts: one to deliver the covers by truck from Philadelphia to New York and the second to ship the covers and containers to Pakistan. Only the second, argues Miller, is governed by the provisions of the bill of lading.

Miller's position is not persuasive. The agreement by Hellenic to transport the covers to New York did not constitute an independent contract. Hellenic agreed to transport the covers by truck at its own expense, and thus received no separate consideration for this allegedly independent contract. Miller had already booked cargo on Hellenic's vessels for Pakistan and had manifested its intent to contract for such by forwarding the covers to the pier designated by Hellenic, all prior to Hellenic's agreement to transport the covers to New York. Plainly, the parties understood that a contract for the carriage of goods to Pakistan existed notwithstanding the fact that no bill of lading had yet been issued. See, e.g., *Krawill Machinery Corp. v. Robert C. Herd & Co.*, 145 F.Supp. 554, 561 (D.Md.1956), aff'd, 256 F.2d 946 (4th Cir. 1958), aff'd, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959); *Mackey*, 83 F.Supp. at 18. It is equally manifest that Hellenic agreed to transport the covers to New York not as an independent gratuity but rather as part of its performance under the contract for shipment to Pakistan and in consideration for Miller's performance under that contract. The specifications of the contract contained in the bills of lading (including the application of COGSA to the pre-loading period) thus governed Hellenic's obligation to transport the covers to New York.

Furthermore, even if Miller were correct in its characterization of the New York-to-Philadelphia transport as an independent contract, that would not aid Miller here. Miller accepted bills of lading providing for the application of COGSA to any claims against Hellenic arising from Hellenic's conduct while in custody of the goods.

Whether, as Hellenic contends, any independent contract was thus "merged" into the bill of lading, or whether the bill of lading effected an amendment to or modification of such independent contract, it is clear that the parties contracted for the application of COGSA to Miller's claims arising from Hellenic's failure to transport the covers from Philadelphia to New York.

Finally, as noted previously, given the governance of COGSA over any such claims, Miller cannot avoid COGSA's application by casting his claims in terms of common law negligence, breach of contract and misrepresentation. *National Automotive Publications*, 486 F.Supp. at 1099; *B. F. McKernin & Co., Inc.*, 416 F.Supp. at 1071. Accordingly, the Court concludes that each of Miller's claims is governed by COGSA.

In view of this conclusion, it is plain that Miller's claims are time-barred. Title 46 U.S.C. § 1303(6) provides in relevant part that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." Here the goods were delivered in Pakistan in July 1979. Miller did not commence this action until November 1981, some sixteen months after the delivery date. Accordingly, Miller's claims must be dismissed.

*Conclusion*

Hellenic's motion for summary judgment dismissing the complaint is granted. Miller's motion to strike defenses is denied.

SO ORDERED.