**DANNEBROG REDERI AS, Nordana Line As, and M/V Skanderborg,** Plaintiffs,

v.

**M/Y TRUE DREAM, her engines, gear, appurtenances and Zevenster Yachttransport, Defendants.**

No. 99–2908–CIV–MARRA.

United States District Court, S.D. Florida.

Nov. 2, 2005.

Christian David Keedy, Aran Corea & Guarch, Miami, FL, Gary Edward Davidson, Rasco Reininger Perez Esquenazi, Coral Gables, FL, Alanson T. Chenault, Fowler Rodriguez Kingsmill et al., New Orleans, LA, Antonio J. Rodriguez, for Defendants.

## OPINION AND ORDER

MARRA, District Judge.

This cause is before the Court upon Plaintiffs Dannebrog Rederi AS, Nordana Line AS and M/V Skanderborg's ("Plaintiffs") Motion for Summary Judgment [DE 278] and Defendants Ashlar Limited and M/Y True Dream's ("Defendants") Motion to Strike the Affidavit of Chester D. Hooper [DE 295]. The Court has carefully considered the motions and is otherwise fully advised in the premises.

### I. Motion to Strike

■ Defendants move to strike the affidavit of Chester D. Hooper [DE 280], the attorney for Plaintiffs. Mr. Hooper filed this affidavit in support of Plaintiffs' Motion for Summary Judgment. Defendants argue that the affidavit is improper because the affidavit is not based on Mr. Hooper's personal knowledge of the facts of the case and consists instead of inadmissible hearsay. *See* Defendants' Motion to Strike at 1–2. Plaintiffs respond that the motion to strike was untimely, filed in violation of this Court's Local Rules that require that counsel for a moving party confer with opposing counsel prior to filing a motion to strike, and that Defendants failed to identify objectionable material. Plaintiffs also point out that the affidavit contains admissible evidence or annexes admissible evidence. *See* Plaintiffs' Response at 4.

Michael T. Moore, Moore & Company, Alejandro Francisco Hoyos, Rojas Santos Stokes & Garcia, Coral Gables, FL, Chester D. Hooper, Haight Gardner Holland & Knight, New York City, Paul Howard Minoff, Holland & Knight, Fort Lauderdale, FL, for Plaintiffs.

With respect to the procedural arguments raised by Plaintiffs, the Court finds these arguments to be unavailing. Defendants recently obtained new counsel and both sides were granted numerous extensions by the Court with respect to various motions filed. Although Defendants failed to confer with counsel as required under the Local Rules, the Court recognizes that a dismissal on these grounds alone would merely result in the motion being re-filed at a later date. Given the impending trial, the Court wishes to address the merits of the motion without further delay. Finally, the Court concludes that since Defendants have moved to strike the affidavit in its entirety, there was no reason for Defendants to identify specific portions that they sought to strike.

Turning to the substantive arguments, the Court begins by noting that Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits submitted in support of a motion for summary judgment shall be made on personal knowledge. *See* Fed.R.Civ.P. 56. Here, Mr. Hooper's affidavit consists of statements that constitute argument. *See* Affidavit at ¶¶ 2, 5, 6, 18–20. Additionally, other statements provide citations to the record and summaries of the record evidence. *See* Affidavit at ¶¶ 12–16. Clearly, these statements are not within the personal knowledge of the attorney as they concern factual events that occurred in the case. In fact, the proper place for these references is in the Statement of Material Facts.[1] Finally, other statements are merely counsel's interpretation of Judge Gold's prior Order. *See* Affidavit at ¶¶ 3, 5, 11, 15, 18, 19. Thus, this Affidavit is not in compliance with the directive set forth in Rule 56(e) of the Federal Rules of Civil Procedure.

Accordingly, the Defendants' Motion to Strike is granted. The Affidavit is stricken; however, the exhibits attached to the Affidavit are not stricken.

## II. Motion for Summary Judgment

### A. Background

On September 3, 2002, Judge Gold issued an Order on various motions for summary judgment ("Order") [DE 257]. Familiarity with that Order is presumed. Plaintiffs bring this Motion for Summary Judgment, claiming that the United States Supreme Court's recent decision in *Norfolk Southern Railway Co. v. James Kirby*, 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) renders irrelevant the material factual issues that Judge Gold identified in his Order as precluding summary judgment. Among the factual issues that Plaintiffs claim are now rendered moot include: a determination as to the governing contract of carriage for the True Dream, the role of Zevenster, and the timing of the negligence that resulted in damage to the True Dream.

Defendants argue that *Kirby* does not apply to the instant case. Moreover, Defendants assert that questions of fact remain that prevent the entry of summary judgment.

### B. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions

---

1. Indeed, many of the statements in Mr. Hooper's affidavit are referred to in Plaintiffs' Statement of Material Facts.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### C. The Applicability of Norfolk Southern Railway Co. v. James Kirby, Pty. Ltd.

The Court begins its analysis with a summary of the facts and holding in the recent Supreme Court case of *Norfolk Southern Railway Co. v. James Kirby*, 543 U.S. 14, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). Kirby, an Australian manufacturer, hired International Cargo Control ("ICC") to arrange for the delivery of machinery from Australia to Alabama. *Kirby*, 125 S.Ct. at 390. ICC is a "freight forwarding company," which means that it coordinates overseas transportation of cargo. *Id.* Kirby and ICC entered into a contract of carriage, which was a bill of lading. *Id.* That bill of lading contained various liability limitations clauses, including a default limitation of liability rule that is set forth in the Carriage of Goods by Seas Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq. Id.*

ICC hired a German ocean shipping company, Hamburg Sud, to transport the machinery. *Id.* at 391. Hamburg Sud issued a bill of lading to ICC. *Id.* It, too,

contained various liability limitation clauses. *Id.* Notably, it included a liability limitation clause pursuant to COGSA which extended COGSA's default limitation of liability to "the entire period in which the machinery would be under its responsibility, including the period of inland transport." *Id.* at 396. Hamburg Sud then hired Norfolk Southern Railroad ("Norfolk") to take the machinery from the shipping port in the United States to the inland location in Alabama. *Id.* at 390. The Norfolk train derailed en route to Alabama, causing $1.5 million in damages. *Id.* Kirby and its insurer sued Norfolk. Norfolk claimed that its liability could not exceed the limitations set forth in both bills of lading. *Id.* at 392.

The Supreme Court held that the liability limitation in Kirby and ICC's bill of lading extended to the railroad, which was ICC's subcontractor. *Id.* at 397. The Court found that the railroad was an intended beneficiary of the bill of lading entered into between Kirby and ICC since these parties knew that railroad services would be necessary to complete delivery. *Id.* at 398. As such, the Court held that the liability limitation clauses in the bill of lading between Kirby and ICC extended to the railroad. *Id.*

With respect to the bill of lading between Hamburg Sud and ICC, the Court stated that the question before the Court was more "difficult" and "require[d] [the Court] to set an efficient default rule for certain shipping contracts." *Id.* The Court held that "[w]hen an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation

to which the intermediary and carrier agreed." *Id.* In other words, the Court treated ICC as Kirby's agent for the "single, limited purpose" of "ICC contract[ing] with subsequent carriers for limitation on liability," including liability limitations for negligence that results in damage. *Id.* at 398–99. The Court stated that "intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability limitations with carriers downstream." *Id.*

### 1. Do material issues of fact remain on the issues of agency and a determination of the governing contract?

Plaintiffs claim that the facts in the instant case are "identical" to the facts in *Kirby.* Plaintiff's Motion at 7. Here, Ashlar, the owner of the True Dream, entered into a Charter Party with Zevenster to obtain space on an ocean vessel to carry the True Dream to Fort Lauderdale. Order at 5. The Charter Party provided that the True Dream would be transported aboard the Waddenzee vessel and the Charter Party identified Zevenster as "agent to owner" and stated that any bills of lading would be issued "without prejudice" to the terms of the Charter Party. *Id.* at 5–6. Pursuant to concerns that the True Dream would not be delivered in time for loading, Zevenster informed Ashlar that the Skanderborg would be substituted for the Waddenzee as the transport vessel. *Id.* at 6. Zevenster then executed a "Conlinebooking" Liner Booking Note with Nordana Line, which evidenced the booking of the True Dream as cargo on Skanderborg. *Id.* The Booking Note referred to the terms of the Nordana Line Bill of Lading[2] for the True Dream. *Id.*

Judge Gold's prior Order held that there was a material issue of fact as to

---

**2.** That bill of lading is essentially identical to the bill of lading issued for M. Paradise. Order at 6. Judge Gold found that the bill of

lading issued for M. Paradise provided Skanderborg with the liability limitation set forth in COGSA, although Judge Gold found that

which document was the governing contract and whether Zevenster acted as Ashlar's agent when negotiating the transport and the Booking Note for the True Dream. The Court agrees with Plaintiffs that, under the reasoning of *Kirby*, these issues no longer present genuine issues of material fact. Indeed, the Supreme Court in *Kirby* set forth a default rule governing contracts entered into by an intermediary with a carrier that limit the cargo owner's recovery. That rule is simple: intermediaries are to be treated as agents with respect to their role in contracting with carriers for limitations on liability. *See Kirby*, 125 S.Ct. at 399.

Here, Zevenster, like ICC in *Kirby*, had the responsibility of arranging for the transportation of the cargo (*i.e.*, True Dream). That makes Zevenster Ashlar's agent for purposes of contracting with subsequent carriers for limitations on liability. When Zevenster entered into the Booking Note with Skanderborg, it entered into a contract that limited Ashlar's ability to seek full recovery against Skanderborg. Hence, under *Kirby*, Zevenster is Ashlar's agent and Zevenster bound Ashlar to the terms of the Booking Note entered into on Ashlar's behalf.

■ Nonetheless, Defendants contend that *Kirby* is inapplicable. The Court finds Defendants' arguments unpersuasive. First, the Court rejects Defendants' argument that *Kirby* applies only if Zevenster operated as a freight forwarder or a transfer company because ICC was a freight forwarder. *See* Defendants' Response at 11. While the Supreme Court did note that ICC operated as a freight forwarder,

the holding of *Kirby* was not limited to freight forwarders. Instead, the Court extended its rule to any time that an "intermediary" who is "entrusted with goods" contracts for liability limitations. *Kirby*, 125 S.Ct. at 399. Here, Zevenster clearly acted as an intermediary between the cargo owner (Ashlar) and the shipper (Skanderborg). Likewise, Defendants' argument that *Kirby* is inapplicable because the facts of *Kirby* concerned land and sea transportation and the facts here concern only sea transportation is a meaningless distinction. The Supreme Court stated that it was setting a "default rule," which this Court interprets to mean that the rule should be broadly applied to all maritime cases. Surely, the Supreme Court recognized that the many cases that would follow *Kirby* would concern contracts that contemplated sea transportation only. Thus, this argument is rejected.

Finally, all of Defendants' remaining arguments rely on their assumption that the Charter Party is the governing contract in this case. *Kirby* compels a different result. In *Kirby*, ICC and Kirby entered into a bill of lading that set a liability limitation that was higher than the bill of lading entered into by ICC and Hamburg Sud. Nonetheless, the Court found that Kirby was bound by the lower liability limit agreed to between ICC and Hamburg Sud. In other words, Kirby was bound to a contract with less favorable terms, even though Kirby did not know the terms of the contract when it was signed by ICC on Kirby's behalf. Applied here, Zevenster's contract with Skanderborg became the governing contract. Thus, the Booking Note, which incorporated the bill of lading's liability limitations, controls.

material issues of fact regarding the timing of the negligence in the stowing of cargo prevented him from entering summary judgment

as to whether the liability limitation should be applied. Order at 25.

In sum, the Court finds that *Kirby* has rendered moot the issues of agency and the dispute over which contract governs that were identified by Judge Gold as material issues of fact.[3]

*2. Do material issues of fact remain on the issue of when the negligence occurred?*

The prior Order found that Plaintiffs would be entitled to the limitation of liability in the Bill of Lading under COGSA if the negligence occurred during the period of time from when the True Dream was loaded on to Skanderborg to the time when the True Dream was discharged from Skanderborg. Judge Gold found that the record was unclear as to when the negligence occurred and, therefore, that question was considered to present a genuine issue of material fact. In making that determination, Judge Gold relied on the reasoning set forth in *Philip Morris v. American Shipping Co., Inc.*, 748 F.2d 563 (11th Cir.1984).

Plaintiffs argue that *Kirby* overrules *Philip Morris* to the extent that *Philip Morris* stands for the proposition that a liability limitation does not apply under COGSA if negligence occurred prior to or during the loading of the True Dream. In *Philip Morris*, the Court found that a carrier that failed to exercise due diligence to prevent damage to cargo both before it was loaded on the ship and after it arrived in Miami should not be given the benefit of the liability limitation in COGSA, despite the fact that the parties had extended the default liability limitation to the period of time before the goods were loaded on the ship and after the goods were discharged. *Id.* at 567.[4]

 COGSA's liability limitation applies during "the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C.App. § § 1301(e), 1304(5); *see also Kirby*, 125 S.Ct. at 396. Shippers and cargo owners may, however, enter into an agreement to extend the liability limitation rule by contract and cover the entire period that the shipper remains responsible for the cargo. *See* 46 U.S.C App. § 1307; *see also Kirby*, 125 S.Ct. at 396. That period may include the period of time of inland transport. *Kirby*, 125 S.Ct. at 396.

In *Kirby*, the Supreme Court examined the negligence of Norfolk, the railroad carrier.[5] *Kirby*, 125 S.Ct. at 398. The Court

---

**3.** Defendants make no argument that *Kirby* should not apply retroactively and the Court will not address an argument not raised by counsel. However, the Court notes that the Supreme Court stated that its decision provided "a legal backdrop against which future bills of lading will be negotiated" and that "future parties remain free to adopt their contracts to the rules set forth here". *Kirby*, 125 S.Ct. at 400.

**4.** *Philip Morris'* failure to enforce the parties contractual extension of COGSA has been criticized by other Courts. *See Sabah Shipyard Sdn. Bhd. v. M/V Harbel Tapper*, 178 F.3d 400 (5th Cir.1999); *Trans World Tanning Co. v. U.S. Lines, (S.A), Inc.*, No. 85–3206, 1986 WL 3756, 1986 U.S. Dist. LEXIS 27747

(E.D.Pa. Mar. 25, 1986). Furthermore, one commentator has remarked (and cited *Philip Morris* in support) that only "a handful of courts have been reluctant to allow a carrier to limit its liability ... when the carrier's negligence has caused the damage." Amy S. Parigi, *Sabah Shipyard Sdn. Bhd. v. M/V Harbel Tapper; Once Again, COGSA's $500 Limitation on Liability Proves to be the Biggest Bargain in the Shipping Industry*, 75 Tul. L.Rev. 811 (2001).

**5.** In the recitation of facts, the Supreme Court does not explicitly state that the derailment of the train was due to negligence; however, in pronouncing its holding that an intermediary can negotiate enforceable agreements with carriers, the Court states that it is addressing

observed that the liability limitation entered into between ICC and Hamburg Sud was governed by COGSA and that the parties extended the liability limitation in COGSA to the period of inland transport. *Id.* at 396. Given that the Court upheld COGSA liability limitations in a negligence case that occurred on land, the Court agrees with Plaintiffs that *Philip Morris* is no longer controlling authority on this point. Instead, under *Kirby,* the COGSA liability limitation applies regardless of when the negligence relating to the damage of the True Dream occurred. Significantly, the Bill of Lading in the instant case had a similar clause to the clause in *Kirby* that extended the COGSA liability limitation to cover the entire period of time in which the shipper maintained responsibility for the cargo. Thus, *Philip Morris* is implicitly overruled by *Kirby* and the factual issue of when the negligence occurred is no longer material.

Moreover, even if *Kirby* did not overrule *Philip Morris,* the Court concludes that *Philip Morris* does not control in this case. *Philip Morris* relied on a Fifth Circuit case that held that "[l]imitations on the carrier's liability are inapplicable if damage occurs due to negligence in the proper delivery of the cargo." *Philip Morris,* 748 F.2d at 566–67 citing *F.J. Walker Ltd. v. M.V. Lemoncore,* 561 F.2d 1138, 1143 (5th Cir.1977). Here, the damage to the ship either occurred prior to, during, or after the loading of the ship, and not during the unloading or delivery of the ship once it arrived at port. *See* Order at 25. Fur-

thermore, in *Philip Morris,* the Eleventh Circuit made a distinction between damage that occurred between the "pre-loading period when the COGSA limitations may have been applicable from the damage which occurred during the post-discharge period when the COGSA limitations were not applicable." *Philip Morris,* 748 F.2d at 567. Again, in this case, there are no facts that suggest that any damage occurred during the "post-discharge period." Instead, the possible periods of time in which the damage occurred to the True Dream all fell squarely under the time periods that *Philip Morris* acknowledged were covered under COGSA. Thus, this Court finds that *Philip Morris* is distinguishable on its facts and does not apply in this case.[6]

### D. Customary Freight Unit

■ Under 46 U.S.C.App. § 1304(5), COGSA applies the $500 liability limitation per package or per customary freight unit. Here, none of the parties argue that the True Dream was a package under COGSA. Plaintiffs argue that the True Dream constitutes one customary freight unit under COGSA and that the $500 liability limitation should be applied to Defendants' claim for damages. In contrast, Defendants argue that there are issues of material fact that preclude summary judgment on this issue.[7]

■ Significantly, the parties agree on the proper legal standard to be applied in making a determination of the applica-

---

"liability limitations for negligence resulting in damage." *Kirby,* 125 S.Ct. at 398.

**6.** The Court recognizes that Judge Gold held that *Philip Morris* was applicable to the facts in this case; however, this Court is free to reconsider that ruling prior to final judgment

being entered in this case. The Court chooses to exercise that option here.

**7.** The prior Order did not address the issue of whether the True Dream constituted one customary freight unit under COGSA.

ble customary freight unit. A customary freight unit is "the unit of quantity, weight or measurement of the cargo customarily used as the basis for the calculation of the freight rate to be charged." *Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1108 (5th Cir.1997). In computing what unit was used to calculate the freight in a particular case, courts rely on the bill of lading and the applicable tariff.[8] *See FMC Corp. v. S.S. Marjorie Lykes*, 851 F.2d 78, 80 (2d Cir.1988). The recent trend among courts is not to look to what is customary in the industry, but to the intent of the parties as expressed in the bill of lading. *See id.; Henley Drilling Co. v. McGee*, 36 F.3d 143, 148 n. 10 (1st Cir.1994); 2A–XVI Benedict on Admiralty § 168 (2004). A customary freight unit need not have any relation to the physical aspect of the cargo; instead, it relates to the calculation of the remuneration due the carrier. *Craddock*, 116 F.3d at 1108. A determination of the customary freight unit is a question of fact. *See Hayes–Leger Assoc., Inc. v. M/V Oriental Knight*, 765 F.2d 1076, 1081 n. 10 (11th Cir.1985); *Craddock*, 116 F.3d at 1109. Finally, when freight is computed on a lump sum basis, the $500 liability limitation applies to the entire shipment. *See Henley*, 36 F.3d at 150; *Ulrich Ammann Bldg. Equip. Ltd. v. M/V Monsun*, 609 F.Supp. 87, 91 (S.D.N.Y.1985).

Plaintiffs point to the affidavit of Michael F. Holm, who was responsible for negotiating the amount of freight that Nordana/Skanderborg charged for transporting the True Dream. Mr. Holm states that there was no "set freight rate for yachts according to their size or weight."

Affidavit of Holm at ¶ 3. Instead, the freight rate was a lump sum rate. *See id.* at ¶ 9. Indeed, the rider clause to the booking note stated that a lump sum rate would be charged. *See* Exhibit B, attached to the Affidavit of Holm. Furthermore, Mr. Holm characterized the True Dream as constituting "one freight unit." *Id.* Plaintiffs contend that this is direct evidence that the True Dream was a single customary freight unit.

Defendants do not directly attack this evidence. Instead, they argue that the tariff creates a question of material fact as to the calculation of the freight rate. In support, Defendants point to language in the tariff that states that freight rates are applied per one cubic meter or 1,000 kilograms and in terms of United States currency. Exhibit E to Defendants' Response. Also, Defendants point to a clause in the booking note that the freight was being charged as a lump sum, but that it could be increased if the weight exceeded the amount previously stated. *See* Exhibit B, attached to affidavit of Holm. Finally, Defendants submit an email that concerns other yachts that were being transported on the Skanderborg. Exhibit C, attached to Defendants' Response. On that email are handwritten calculations. Defendants contend that these calculations reflect that freight on the Skanderborg were not calculated on a lump sum basis, but by some other means.[9]

However, Plaintiffs correctly point out that the tariff submitted by Defendants is dated as being effective as of November of 2000, which was one year after damage occurred to the True Dream. Moreover,

---

8. The tariff sets forth the freight rate. *See FMC Corp.*, 851 F.2d at 80.

9. Defendants do not provide an affidavit by the individual who sent or received the email or by the person who made these notations.

Plaintiffs submit evidence by a company that publishes ocean carrier rate tariffs which shows that, during October of 1999, the applicable tariff for Nordana Lines for the relevant time period was a lump sum.[10]

Taking into account this evidence, the Court finds that Plaintiffs have demonstrated that the True Dream was one customary freight unit. The booking note and the affidavit of Mr. Holm lead the Court to conclude that freight was calculated as a lump sum. Furthermore, Defendants do not provide any evidence that the True Dream weighed more than expected and that the freight increased, as provided in the booking note. Lastly, the email that Defendants submitted does not concern the True Dream.

Although Defendants object to Plaintiffs' contention that the lump sum rate should be applied, Defendants has failed to controvert any of the compelling evidence submitted by Plaintiffs and therefore have failed to meet their burden as nonmoving parties pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See B. Terfloth v. M/V Tropic Lure*, 682 F.Supp. 514 (S.D.Fla.1987) (mere objections to submitted evidence regarding the customary freight unit is insufficient to carry the nonmoving party's burden on summary judgment when the court is presented with bill of lading that supports moving party's argument); *see also* Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. Since Plaintiffs have met their burden in showing that there is an absence of a genuine issue of material fact and Defendants have failed to present facts that show there is a genuine issue for trial on this point, the Court concludes that the

True Dream was one customary freight unit.

### III. Conclusion

It is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment [DE 278] is **GRANTED** and Defendants' Motion to Strike the Affidavit of Chester D. Hooper [DE 295] is **GRANTED**. Within ten (10) days of the date of this Order, the parties shall submit a joint proposed judgment. If the parties cannot agree on a proposed judgment, each side shall unilaterally submit a proposed judgment.

---

10. This affidavit is signed August 17, 2005, which was clearly after discovery ended in this case. Defendants, however, do not move to strike this affidavit or the accompanying documentation and the Court will therefore consider it.