**UNDERWRITERS AT INTEREST UNDER BAILEE INSURANCE POLICY NO. 09RTAMIA1158 as assignee of Circuit Zone, Ltd., Plaintiffs,**

v.

**SEATRUCK, INC., and Seafreight Agencies (USA), Inc., Defendants.**

**Case No. 11–23680–CIV.**

United States District Court, S.D. Florida.

March 29, 2012.

Michael Simon, Michael A. Monteverde, Simon, Reed & Salazar, P.A., Miami, FL, for Plaintiffs.

Robert William Blanck, Jonathan Hernandez, Blanck and Cooper, PA, Miami, FL, for Defendants.

### *ORDER ON PLAINTIFFS' MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION FOR TAXATION OF COSTS AND FEES*

ROBERT N. SCOLA, JR., District Judge.

THIS MATTER is before the Court on the Plaintiffs' Motion for Remand of the instant litigation back to the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County Florida, and accompanying Motion for costs and fees. Having reviewed the Motion, the record, and the relevant legal authorities, it is **ORDERED and ADJUDGED** that the Motion for Remand (ECF No. 6) is **GRANTED,** and the Motion for costs and fees is **DENIED.**

### I. *FACTUAL BACKGROUND*

The Plaintiffs are underwriters engaged in the business of issuing insurance policies in Florida (the "Underwriters"). They come to this action as assignees of the claims and rights of Circuit Zone, Ltd. ("Circuit Zone"), a foreign company that owned certain cargo property. Around November 2009, that cargo was in transit from the United States to Trinidad. Circuit Zone did business with FEI Logistics, Inc. ("FEI"), a freight forwarding company, as its agent to carry out the moving of the cargo. FEI engaged in the services of Defendants, SeaTruck, Inc. and Seafreight Agencies (USA), Inc. (collectively, "SeaTruck"), companies engaged in commercial cargo transport, to provide transportation of the cargo to Trinidad. In the meantime, FEI leased space for the cargo in a warehouse in Doral, Florida, that was owned and operated by Millenium Logistics ("Millenium"). The relationship between Circuit Zone, as owner of the cargo, and SeaTruck, as the carrier of the cargo, would have been governed by the terms of SeaTruck's standard bill of lading, to be issued once the cargo was loaded on board SeaTruck's vessel.

SeaTruck provided Millenium with a container, along with a confidential booking number used to reference and identify the cargo to be shipped. Around November 19, 2009, a truck driver, claiming to be a SeaTruck representative, arrived at the warehouse and provided the booking number for identification. Based on these statements and the booking number, Millenium loaded the cargo onto the driver's truck, and the truck departed with the cargo.

Shortly after the driver left the warehouse with the cargo, SeaTruck's representatives provided a second, additional tracking number and stated that Millenium should request the new number from whoever came to receive the cargo. SeaTruck allegedly issued the second number upon realizing that its security had been breached, compromising the original number. Soon after the issuance of the new tracking number, a SeaTruck driver arrived at the warehouse to receive the cargo. Of course, by that time, the cargo was no longer at the warehouse.

As it turns out, the first driver was an impostor who absconded with the cargo before anyone caught onto the ruse. As a result of the theft, Circuit Zone allegedly sustained losses valued at $289,774.37. Under an insurance policy, the Underwriters paid Circuit Zone $243,208.30 in insurance proceeds in exchange for an assignment of all of Circuit Zone's rights and claims related to the loss of the cargo.

The Underwriters filed this action in state court on September 6, 2011, raising a single claim for negligence against the SeaTruck Defendants, among others. The

Defendants removed the action to this Court on October 11, 2011 based on the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 *et seq.* (2006) ("COGSA"). The Underwriters filed an Amended Complaint, raising the same substantive claim of negligence against the current SeaTruck Defendants in separate counts. In those counts, the Underwriters allege that Sea-Truck owed Circuit Zone a duty to prevent the booking number and pick-up time from being compromised, and a duty to immediately apprise the relevant parties that a security breach had occurred. The Underwriters have now moved to remand this action back to state court for lack of subject matter jurisdiction.

## II. *LEGAL STANDARDS*

### a. *Removal and Remand*

■ "Federal courts are courts of limited jurisdiction." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir.2003). Pursuant to 28 U.S.C. § 1446(a)-(b) (2011), a defendant may remove any civil action over which federal courts have original jurisdiction to the district court for the district and division embracing the place where such action is pending, provided that none of the defendants are citizens of the State in which such action is brought. "A removing defendant bears the burden of proving proper federal jurisdiction.... Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Adventure Outdoors, Inc. v. Bloomberg,* 552 F.3d 1290, 1294 (11th Cir. 2008) (citing *Leonard v. Enter. Rent A Car,* 279 F.3d 967, 972 (11th Cir.2002); *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996)).

SeaTruck premises removal of this action on the presence of a federal question pursuant to 28 U.S.C. § 1331, and on 28 U.S.C. § 1337(a), which grants original jurisdiction over any civil action arising under an act of Congress regulating commerce. Both of these allegations are based on SeaTruck's claim that the Underwriters' state law claims are preempted by the COGSA.

### b. *COGSA*

■ Enacted in 1936, COGSA governs all foreign trade contracts for the carriage of goods by sea to or from U.S. ports. COGSA § 13, 46 U.S.C. § 30701. COGSA requires a carrier in such contracts to issue to the cargo owner a bill of lading that contains certain terms. COGSA § 3, 46 U.S.C. 30701; *Kawasaki Kisen Kaisha Ltd. v. Regal–Beloit Corp.,* —— U.S. ——, 130 S.Ct. 2433, 2440, 177 L.Ed.2d 424 (2010). "The purpose of COGSA was to achieve international uniformity and to redress the edge in bargaining power enjoyed by carriers over shipper and cargo interests by setting out certain duties and responsibilities of carriers that cannot be avoided even by express contractual provision." *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Ltd.,* 215 F.3d 1217, 1220 (11th Cir.2000) (quoting Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 8–15, at 537 (2d ed.1994)). In light of this purpose, courts in this Circuit have held that where COGSA applies to an action, it provides the exclusive remedy and completely preempts state law causes of action. *Id.; see also Eurosistemas, S.A. v. Antillean Marine Shipping, Inc.,* No. 11–21546–CIV, 2011 WL 3878357, at *2 (S.D.Fla. Sept. 1, 2011).

By default, COGSA applies only from the time cargo is loaded onto a carrier's vessel until it is discharged. *See* COGSA §§ 1(e), 2–3, 46 U.S.C. § 30701; *Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.,* 172 F.3d 781, 785 n. 6 (11th Cir.1999) ("[COGSA] governs a carrier's duty from the time of loading to the time of discharge...."); *Eurosistemas,* 2011

WL 3878357, at *2. However, the parties may agree in the bill of lading to extend the applicability of COGSA to the pre-loading and post-discharge period. COGSA § 7, 46 U.S.C. § 30701 ("Nothing contained in this chapter ... shall prevent a carrier or a shipper from entering into any agreement ... as to the responsibility and liability of the carrier for the loss or damage to or in connection with the custody and care and handling of the goods prior to the loading on and subsequent to the discharge from the ship...."); *Eurosistemas*, 2011 WL 3878357, at *2; *Neutax, S.A. v. Global Freight Servs., Inc.*, No. 02–21943–CIV, 2002 WL 31962180, at *1 (S.D.Fla. Oct. 25, 2002) (denying remand and finding COGSA applicable where bill of lading extended applicability to pre-loading and post-discharge periods).

The *prima facie* evidence of a contract governed by COGSA is the bill of lading. COGSA § 4, 46 U.S.C. § 30701. In this case, it is undisputed that no bill of lading was issued. Notice of Removal 4 ¶ 5, ECF No. 1. The parties agree that this fact is not necessarily dispositive, and that in some circumstances a bill of lading that would have been issued, such as a standard bill of lading, may still bind the parties. *See, e.g., Baker Oil Tools v. Delta Steamship Lines, Inc.*, 562 F.2d 938, 940 & n. 3 (5th Cir.1977) (applying standard bill of lading terms to relationship where bill of lading was to issue upon loading of cargo on defendant's vessel and cargo was in defendant's custody when lost); *see also Interflow (Tank Container Sys.) Ltd. v. Burlington N. Santa Fe Ry. Co.*, No. Civ. A. H–04–2871, 2005 WL 3234360, at *5–6 (S.D.Tex. Nov. 29, 2005) (following *Baker Oil* and applying terms of standard, unissued bill of lading where cargo came into shipper's custody before damage occurred).

SeaTruck's standard bill of lading, attached to the Motion to Remand as Ex-hibit A, contains a "Clause Paramount" regarding the application of COGSA in relation to the parties' relationship. This clause provides, in relevant part:

> CLAUSE PARAMOUNT The receipt, carriage, and delivery of the Goods are governed by the provisions of the transportation agreement evidence hereby and incorporated by this reference including ... the provisions of [COGSA].... Such Act and Rules shall be extended to apply to Goods moved on deck ... before the Goods are loaded on and after they are discharged from the Vessel, and throughout the entire time during which the Carrier is responsible for the Goods under the transportation agreement to the extent required by United States law.... [T]his bill of lading and said COGSA or Hague Rules shall govern the relationships between the Shipper, Consignee and every person having an interest in the Goods on the one hand and the Carrier on the other in every contingency whatsoever....

Bill of Lading ¶ 2, ECF No. 6–1.

### III. *ANALYSIS AND CONTROLLING AUTHORITY*

In this instance, the theft of the cargo undisputedly occurred outside of the default loading-to-delivery period of COGSA application. The essence of the present dispute is whether SeaTruck's standard bill of lading, which extends COGSA's application to a pre-loading period, should bind the parties under these circumstances. The questions before the Court are fairly straightforward: (1) Can COGSA apply by contractual extension to a pre-loading period before the carrier takes custody of the cargo; and (2) If so, does SeaTruck's standard bill of lading extend COGSA application to such a pre-loading, pre-custody period?

### a. Ability to Extend COGSA Application to a Pre-loading, Pre–Custody Period

It is undisputed that COGSA does not apply to the time of theft by its own terms. Instead, SeaTruck relies upon the Clause Paramount of its bill of lading as extending COGSA's application to the time of theft. SeaTruck states that a shipper and carrier are free to contract for such an extension under COGSA § 7, 46 U.S.C. § 30701. Relying on this provision and various cases, SeaTruck argues that the Underwriters have provided no support for the proposition "that COGSA cannot apply to tort claims purportedly arising prior to the defendant's receipt of the cargo." Defs.' Resp. 2:19, ECF No. 8.

■ The Court is not convinced by Sea-Truck's arguments. To begin with, the Court is unaware of, and SeaTruck does not cite, any case which has extended the application of COGSA not only before the loading period, but even before the point where the carrier or one of its agents takes custody of the cargo. The bills of lading found by courts in this Circuit and others to extend COGSA to pre-loading or post-delivery periods have generally found such extension where it was limited to the time of the carrier's actual physical custody of or responsibility for the cargo. *See, e.g., Norfolk S. Rwy. Co. v. Kirby,* 543 U.S. 14, 29, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) (upholding bill of lading's extension of COGSA to "entire period in which [cargo] would be under [carrier's] *responsibility*" (emphasis added)); *Schramm, Inc. v. Shipco Transp., Inc.,* 364 F.3d 560, 566 (4th Cir.2004) (finding bill of lading validly extended COGSA to entire time cargo was in "actual custody" of carrier); *Groupe Chegaray v. De Chalus v. P & O Containers,* 251 F.3d 1359, 1364 (11th Cir.2001) (finding bill of lading validly extended COGSA application to period of time when goods were in "actual custody" of carrier);

*Mannesman Demag Corp. v. M/V CONCERT EXPRESS,* 225 F.3d 587, 589 (5th Cir.2000) ("A Period of Responsibility clause can be used to extend COGSA's application to the entire time the goods are within the carrier's custody."); *Ins. Co. of N. Am. v. P.R. Marine Mgmt., Inc.,* 768 F.2d 470, 475 (1st Cir.1985) (finding valid extension of COGSA to entire time in which "defendant has custody" of goods); *Interflow,* 2005 WL 3234360, at *4 (upholding clause paramount in bill of lading as extending COGSA to "time when [cargo is] in the custody of [carrier]"); *Neutax,* 2002 WL 31962180, at *1 (same); *Valmet Materials Handling Equipment, Inc. v. Nedlloyd Lijnen B.V. Rotterdam, et al.,* No. 91–232–CIV–J–10, 1993 WL 204149, at *1 (M.D.Fla. Feb. 24, 1993) (same).

The holdings in these cases are consistent with the express language of § 7 itself, which contemplates extension of COGSA's provisions to some period "in connection with the *custody and care and handling* of goods prior to the loading on and subsequent to the discharge from the ship ...." COGSA § 7, 46 U.S.C. § 30701 (emphasis added). Federal courts have recognized the statute's implied scope. *See Mannesman Demag Corp. v. M/V CONCERT EXPRESS,* 225 F.3d 587, 589 (5th Cir.2000) ("A Period of Responsibility clause can be used to extend COGSA's application to the entire time the goods are within the carrier's custody."); *Dannebrog Rederi AS v. M/V TRUE DREAM,* 428 F.Supp.2d 1265, 1272 (S.D.Fla.2005) ("Shippers and cargo owners may, however, enter into an agreement to extend [COGSA] to cover the entire period that the shipper remains responsible for the cargo.").

■ This emphasis on the carrier's responsibility over or custody of the cargo is appropriate, as it provides a practical limit to contractual extension of COGSA beyond

the scope of the carriage relationship which COGSA is meant to protect. By contrast, SeaTruck's interpretation of § 7 does not contain any logical limits. Sea-Truck essentially argues that the parties may contract to apply COGSA's provisions well before the actual carrier relationship begins. Allowing COGSA to extend beyond any physical custody of the cargo by the carrier would effectively mean COGSA claims against a carrier might arise out of factual scenarios indefinitely earlier and more attenuated from the carriage relationship than those presented here, such as when the cargo is clearly within the custody, control, and responsibility of other parties, before a carrier even begins its carrying obligations. In fact, this is precisely SeaTruck's position: that the provisions of COGSA should be extended to allow COGSA claims to exclusively cover an alleged failure to safeguard internal security information while the carrier had neither custody of nor ultimate responsibility for the cargo in question. To call such circumstances a loss of cargo in the course of shipment is something of a mischaracterization. The Court is not convinced that parties may extend COGSA to a pre-loading period before the carrier takes actual custody of the cargo.

The cases SeaTruck relies upon to support its claim that COGSA can apply to tort claims arising prior to the defendant's receipt of the cargo are factually distinguishable. In *Diamond v. State Farm Mut. Auto. Ins. Co.*, No. S–09–1110, 2010 WL 2904640 (E.D.Cal.2010), the plaintiff sued the defendant carrier for various state law causes of action resulting from the carrier's refusal to release the plaintiff's stolen car to anyone other than a person with the issued bill of lading. The *Diamond* plaintiff's claims did not arise prior to the carrier's receipt of the car, but rather were based upon the carrier's failure to return the car once it was in the carrier's custody. In fact, the court found

the carrier's custody of the car—and the bill of lading's reference to custody—significant:

> The bill of lading issued in connection with the shipment of the goods extended COGSA preemption to all times before loading and after discharge *so long as the good[s] were in the custody and control of the carrier* .... COGSA was contractually made applicable to all claims made against [the carrier] in connection with the goods *so long as they remained in [the carrier's] control.*

*Id.* at *5 (emphasis added). Thus, the *Diamond* defendant actually had custody of the cargo when the plaintiff's claim arose, and COGSA was found to apply to the period covering the claim precisely *because* of that custody, and because the bill of lading expressly extended COGSA application to the period of such custody.

SeaTruck cites *Miller Export Corp. v. Hellenic Lines Ltd.*, 534 F.Supp. 707 (S.D.N.Y.1982) for the proposition that where the bill of lading provided that COGSA governed the relationship of the parties prior to loading, COGSA applies to the entire period the carrier and its agents were responsible for the cargo. This interpretation is only partially true: while the *Miller* court found that COGSA did indeed apply to a pre-loading period, it specifically found that, pursuant to the express terms of the relevant bill of lading, COGSA applied to "the entire period of *custody* by the carrier." *Miller*, 534 F.Supp. at 710 (emphasis added). Importantly, the acts giving rise to the plaintiff's claims "occurred after it took custody," and therefore the court held that "under the provisions of the bill of lading any claim arising therefrom is governed by COGSA." *Id.* The court specifically emphasized that its decision was based on the fact that the plaintiff "accepted bills of lading providing for the application of

COGSA to any claims ... arising from [the carrier's] conduct while in custody of the goods." *Id.* at 711. In addition to involving a different factual scenario from the present matter, *Miller*, like *Diamond*, does not actually stand for the proposition that COGSA may be extended to apply to a pre-custody period. To the contrary, custody was the key to that decision.

Finally, SeaTruck argues that *GAF (Osterreich) GmbH v. Dart Containerline Co. Ltd.*, 541 F.Supp. 9 (D.N.J.) rejected an argument that COGSA could not apply where the alleged loss of cargo occurred prior to the carrier's receipt of the cargo. In that case, the plaintiff contracted to ship the cargo in question from New York to Germany. There, the court noted that it was "undisputed that the damage to plaintiff's goods occurred at the sea terminal in Hamburg, West Germany," after the defendant carrier had already both taken custody of the cargo *and actually shipped it* to Germany. In that case, the court did not even need to extend COGSA's provisions beyond the actual handling of the cargo. *GAF*, if anything, is a standard application of COGSA to the post-custody handling of cargo, and is completely distinguishable from the present case.

### b. SeaTruck's Bill of Lading

 Even assuming *arguendo* that parties may contractually extend COGSA well beyond the scope of the carrier relationship, the Court finds that the express terms of SeaTruck's standard bill of lading do not actually extend COGSA application to such a pre-custody period. Federal courts have held that "the extent of any application beyond the scope of [COGSA] is a matter of contract," and therefore, "[a]s a rule adopted by and in a contract, COGSA's provisions are merely contract terms that are modifiable by other language contained in the bill of lading." *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 355–56 (5th Cir.

2004). SeaTruck relies exclusively on the Clause Paramount's statement that "this bill of lading and said COGSA or Hague Rules shall govern the relationships ... *in every contingency whatsoever*," however, SeaTruck does not cite the remaining portions of the Clause Paramount that define the temporal scope of the COGSA extension. The Clause Paramount expressly states that "[COGSA] shall be extended to apply to Goods moved on deck before the Goods are loaded on and after they are discharged from the Vessel, and throughout the entire time during which the Carrier is responsible for the Goods *under the transportation agreement* ...." Bill of Lading ¶ 2 (emphasis added). This clause contains the temporal scope of the COGSA extension within the limits of "the transportation agreement," which in turn references a previous clause defining the scope of the transportation agreement: "The *receipt, carriage, and delivery of the Goods* are governed by the provisions of the transportation agreement evidence hereby...." *Id.* (emphasis added). Reading the relevant provisions of the bill of lading together and in context, while COGSA may apply in any contingency whatsoever *when it applies*, that temporal scope is only extended to the pre-loading period *"under the transportation agreement."* The preloading period covers the "receipt, carriage, and delivery" of the cargo—in other words, *custody* of the cargo.

 Thus, the Underwriters have raised compelling arguments providing at least a significant degree of uncertainty as to the meaning of the terms of the bill of lading. It is a longstanding principle of contract interpretation that "[a]ny ambiguity in a written agreement must be resolved by interpreting the language against the party who drafted the ambiguous language." *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F.Supp.2d 1263, 1296 (S.D.Fla. 2011). In this case, that party is Sea-

Truck, who provided their standard bill of lading. Based upon the language of the contract and these principles, the Court finds that SeaTruck's standard bill of lading did not, by its own terms, effectively extend COGSA's application to a pre-loading, pre-custody period (assuming that it could even do so).

## IV. CONCLUSION

The Court finds significant uncertainty as to whether parties to a shipping contract may contractually extend COGSA to a pre-loading, pre-custody period. Moreover, even assuming *arguendo* that such a contractual extension is possible, the Court also finds that SeaTruck's standard bill of lading did not effectively extend COGSA's application to such a period. Accordingly, SeaTruck has failed to carry its burden of proving the propriety of federal jurisdiction under these circumstances. Even if the result of the foregoing analysis were only uncertainty about the propriety of federal jurisdiction, the Court reiterates that "[a]ny doubts about the propriety of federal jurisdiction should be resolved in favor, of remand to state court." *Adventure Outdoors, Inc.*, 552 F.3d at 1294. Accordingly, the Plaintiffs' Motion for Remand is **GRANTED.**

The Underwriters have additionally moved for taxation of costs and fees related to the filing of the instant Motion to Remand, pursuant to 28 U.S.C. § 1447(c) (2006). An award of attorneys' fees and costs is within the sole discretion of the trial court. *Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314, 1319 (S.D.Fla. 2004) (citing *Destel v. McRoberts Protective Agency, Inc.*, No. 03–62067–CIV, 2004 WL 746293, at *4 (S.D.Fla. Feb. 17, 2004)). There is no presumption in favor of awarding attorneys' fees; rather, "courts may award attorneys' fees incurred as a result of a removal 'only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Watson v. Car-*

*nival Corp.*, 436 Fed.Appx. 954, 955 (11th Cir.2011) (quoting *Bauknight v. Monroe Cnty., Fla.*, 446 F.3d 1327, 1329 (11th Cir. 2006)). SeaTruck raised good faith arguments as to the ability of the parties to extend COGSA's provisions to a pre-loading, pre-custody period. The Court cannot say that SeaTruck's interpretation of the bill of lading and the law relating to COGSA's application, while erroneous, was "objectively unreasonable." Accordingly, the Plaintiffs' Motion for Taxation of Costs and Fees is **DENIED.**

In summary, it is **ORDERED and ADJUDGED** as follows:

1. The Plaintiffs' Motion for Remand (ECF No. 6) is **GRANTED.** This case is **REMANDED** to the Eleventh Judicial Circuit in and for Miami–Dade County, Florida.

2. The Plaintiffs' Motion for Taxation of Costs and Fees is **DENIED.**

3. The Clerk shall administratively **CLOSE** this case, and take all necessary steps to ensure the prompt remand of this matter and transfer this file back to the Circuit Court for the Eleventh Judicial Circuit in and for Miami–Dade County, Florida.